**George Jacob BLAKE, M.D., et al., Plaintiffs,**

v.

**Elizabeth LANG, et al., Defendants.**

**No. 86 Civ. 6015 (WCC).**

United States District Court, S.D. New York.

May 8, 1987.

585

Lewis Novod, New York City, for plaintiffs.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Raymond J. Foley, Asst. Atty. Gen., of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiffs George Blake ("Blake") *et al.* have brought an action, pursuant to 42 U.S.C. §§ 1983 and 1985, seeking damages as well as injunctive relief against the revocation of Blake's license to practice medicine in New York and California. Defendants have moved to dismiss the action on the grounds that, pursuant to the *Younger* abstention doctrine, the complaint should have been presented to the state court. For the reasons outlined below, defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. is granted.

*Background*

Plaintiff received a license to practice medicine in California in 1966 and in New York in 1967. While working as a physician in California, Blake allegedly was the victim of an attempted extortion by Barney Caldwell who, as an investigator for the State of California, threatened to bring criminal charges against Blake if Blake did not meet Caldwell's demands. When Blake refused to pay Caldwell's extortion demands, Caldwell retaliated by alleging to California law enforcement officials that Blake was defrauding Medical, California's medical insurance program. As a result of these allegations, criminal proceedings were brought against Blake. Judge Eugene Langhauser, of the Municipal Court of Central Orange County, dismissed the criminal action and found that there was no factual basis for the charges. According to Blake, despite the dismissal, California State authorities proceeded to "book" him to insure a criminal record. Judge Frank, another California Judge, again dismissed all charges against Blake.

These charges by Caldwell evidently also formed the basis for proceedings brought by the California Board of Medical Quality Assurance ("BMQA") against Blake. Prior to the hearing before the BMQA, Blake resigned as a doctor in California and noti-

fied the BMQA of his decision to do so. Despite the resignation, the California authorities conducted the hearing. Blake allegedly believed that by resigning, the BMQA hearing regarding his alleged misconduct would be cancelled since he was no longer a licensed physician in California. Neither Blake nor his representatives attended these proceedings, and thus the BMQA was evidently unaware that Caldwell, upon whose recommendation and allegations the charges had been brought, had been found guilty of extortion and was incarcerated. As a result of the hearing, at which Blake's position was unrepresented, Blake's license was revoked.

Approximately three years later, Blake's New York medical license was subject to disciplinary action based on two factors: (1) his California medical license had been revoked; (2) Blake made a false statement to New York medical authorities when he claimed on a questionnaire that his medical license had never been revoked in any other state.

A hearing was conducted before the New York State Department of Health Board for Professional Medical Conduct. At this hearing, Blake was represented by counsel who called witnesses and presented evidence on Blake's behalf. The Hearing Committee found:

(1) the allegations (regarding Blake's alleged misconduct in California and his false statement to New York authorities) are sustained by virtue of the decision by the California Board of Medical Quality Assurance (Ex. 8) and the application for registration in New York (Exs. 3 and 9). The decision by BMQA is dispositive here by virtue of the operation of Collateral Estoppel as expressed by the admission of Respondent's Counsel that they concede that they can not collaterally attack action by another state (T. 41).

(2) the finding with regard ... to Respondent's failure to note in his application for registration that his license had been revoked is based upon the fact that the Respondent's claimed lack of knowledge of BMQA's decision and the intermediate proceedings leading up to the revocation was the result of the Respondent's own acts to avoid receipt of any notice of hearing or decision. His departure from California without leaving any notice of change of address to BMQA or even to his attorney can not now be used by him to claim no knowledge of the various proceedings that took place in California.

Based upon their findings, the Committee recommended that the plaintiff's license to practice medicine be suspended for one year, execution of which would be stayed, and that he be fined $5,000.

The Commissioner of Health, upon his review, recommended adoption of the findings of the Hearing Committee but recommended to the Board of Regents that plaintiff's license to practice be revoked, instead of a mere one-year suspension and fine.

Pursuant to Education Law § 6510–a(2), a three-person Review Committee of the New York Board of Regents heard the plaintiff's case on October 10, 1984. The Board of Regents adopted the Review Committee's recommendation and the Commissioner of Education, thereafter issued an Order revoking the plaintiff's license to practice as a physician.

### Discussion

Plaintiff's suit is brought pursuant to 42 U.S.C. § 1983. This statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In plaintiff's complaint, he maintains that the decision in the New York action, which was based solely upon the reciprocity statute (§ 6509(5)(b) of the New York State Education Law), violated his civil rights. While it is not true that the decision of the Hearing Committee was based solely on the California hearing—since there was also the issue of Blake's false statement on

a New York State medical questionnaire—it does appear as if the Hearing Committee's decision regarding the allegations set forth in paragraph 6 and denoted as the First through Nineteenth Specifications, was based solely upon the California hearing. The allegations set forth in paragraph 6 included the allegation of Medical fraud, of Blake's negligent treatment of patients while in California, and of Blake's alleged prescription of controlled substances not in good faith and not in the course of regular professional practice.

Indeed, all of the charges against Blake—except the one concerning his filing a false questionnaire in New York State—are contained in paragraph 6, and the Hearing Committee in New York relied solely on the decision in the California hearing to support their conclusions on all of these charges. They did so in reliance on the New York reciprocity statute mentioned above, and evidently ignored all of the evidence presented by Blake indicating that the California suit was propelled, in large part, by the allegations of Caldwell who was evidently convicted and incarcerated as a result of his attempted extortion of Blake and others. The Hearing Committee also ignored the fact that Blake did not defend that action, and that he had not done so allegedly due to his poor mental health at that time which was allegedly brought on by Barney Caldwell's extortion demands while Caldwell was acting as a California state investigator.

It should be noted that Blake presented a great deal of evidence to the Hearing Committee indicating that Caldwell caused the California criminal and medical proceedings to be brought, and that Blake was found innocent at the criminal proceedings in which he defended himself. Blake also presented a letter to the Hearing Committee indicating that he was in poor mental health at the time of the BMQA hearing due to the extortion efforts of Caldwell and other emotionally straining circumstances in his life at that time. Blake alleged that it was because of his poor mental health, brought on partly by Caldwell's extortion activities, that he chose to resign his Cali-fornia medical license and not go through another disciplinary hearing.

There are two questions presented to this Court in this motion to dismiss. The first is whether the defendants violated Blake's civil rights by relying solely on the New York reciprocity statute in reaching its decision to revoke Blake's license, and completely ignoring all of the evidence presented by Blake. The second question is whether the Commissioner of Health and the Board of Regents discriminated against Blake and acted arbitrarily by disciplining him more severely than the Hearing Committee had recommended, and more severely than other doctors similarly situated.

*Application of New York's Reciprocity Statute*

The statute under which the Hearing Committee was acting provides in pertinent part:

> Each of the following is professional misconduct, and any licensee found guilty of such misconduct under the procedures prescribed in section sixty-five hundred ten shall be subject to the penalties prescribed in section sixty-five hundred eleven:
>
> . . . .
>
> (5)(b) Having been found guilty of improper professional practice or professional misconduct by a duly authorized professional disciplinary agency of another state where the conduct upon which the finding was based would, if committed in New York state, constitute professional misconduct.

In this case, the defendants did not violate Blake's constitutional right to due process by enforcing the New York reciprocity statute. Blake could have appeared at the California hearing before the BMQA, or sent a representative to do so. If it is true that he did not know the hearing was being held and/or that he did not know the outcome of the hearing, these were the natural results of his having left the state without leaving a forwarding address. Finally, Blake could today return to California and have the revocation of his license overturned if it was procured through fraud.

Based on all of these factors, it is clear that Blake had many opportunities, and still has the means, to protect his property right in his medical license. As stated in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), in order to maintain an action under 42 U.S.C. § 1983, it must first be demonstrated that the liberty, property or constitutional right abridged was without due process of law. Given all the opportunities which Blake had to protect his license, it cannot be said that the Hearing Committee violated Blake's constitutional due process rights when it found him guilty of professional misconduct by applying the New York reciprocity statute against him based on the revocation in California by the BMQA.

### Disciplinary Action of the Commissioner and the Board of Regents

Blake maintains that, under color of state law, the defendants discriminated against him and deprived him of his civil rights by ignoring the Hearing Committee's recommendation regarding appropriate disciplinary action and imposing much harsher sanctions against him. To prove his contention, Blake has provided the Court with compilations obtained from the Board of Regents, Office of Professional Discipline, which report on disciplinary activities against licensed individuals. In 1984, only two of the Hearing Committee's disciplinary recommendations were reversed. One of them was in Blake's case. The other doctor receiving a revocation where a suspension was recommended involved a case where the Committee found that the doctor had been both grossly negligent and grossly incompetent—neither of which was found in Blake's case. Further, the two doctors actually convicted of crimes in 1984 (which Blake was not) only had their licenses suspended and stayed.

The situation was similar in 1985. The only recommendation overturned by the Board of Regents involved a doctor who had been convicted of a crime and was a drug user tried to surrender his license, and it was revoked instead. Even doctors convicted of crimes and/or habitual drug users were not subjected to more than a stay and probation.

It seems, then, that the treatment which Blake received was harsh, given the circumstances. There may have been other factors which the Health Commissioner took into account in deciding to revoke Blake's license, but they are not present in the record before this Court.

The final question which must be addressed is whether this case is properly before this Court. It is well established that the rule of federal non-intervention articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and recently reaffirmed by the Supreme Court in *Pennzoil Co. v. Texaco Inc.,* —— U.S. ——, ——, 107 S.Ct. 1519, 1525–29, 95 L.Ed.2d 1 (1987), requires a federal court to abstain when there is an ongoing state civil proceeding. *Id. see also Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). In *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court applied *Younger* principles to preclude interference in judicial contempt proceedings, ruling that it was not significant whether the state court proceeding was labelled civil, quasi-criminal or criminal in nature. *See, also, Huffman v. Pursue,* 420 U.S. 592, 601, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482 (1975).

Further, the United States Supreme Court has stated that *Younger* requires a federal court to abstain from interfering with pending professional disciplinary proceedings in a state court. In *Middlesex Ethics Committee v. Garden State Bar association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d. 116 (1982), the Court found that New Jersey's attorney disciplinary proceedings met the three prerequisites for abstention:

1. The disciplinary proceedings constituted a state judicial proceeding;

2. The disciplinary proceedings involved an important state interest; and

3. There was an adequate opportunity for the plaintiff to raise his constitutional claims in the state proceeding.

*See also Moore v. Sims,* 442 U.S. 415, 432, 99 S.Ct. 2371, 2381, 60 L.Ed.2d 994 (1979); *Juidice, supra* 430 U.S. at 337, 97 S.Ct. at 1218 ("no more [than the opportunity to raise the federal claim in the State court action] is required to invoke Younger abstention."); *Schachter v. Whalen,* 445 F.Supp. 1376, 1383 (S.D.N.Y.1978). In *Crescenzi v. Bergamasco, et al.,* Case No. 82 Civ. 3690 (S.D.N.Y.1983), this Court applied the *Middlesex Ethics Committee* ruling to dismiss, on the ground of abstention, an attorney's § 1983 action to enjoin state court disciplinary proceedings against him and obtain a damage award. And in *Harvey v. Board of Registration,* 544 F.Supp. 82 (D.Mass.1982), the Court dismissed a nurse's § 1983 action for claimed due process violations in the state's recission of a waiver requiring her to sit for a competency test. The court found *Younger* abstention applied because the plaintiff could obtain the principal relief requested in state administrative proceedings and judicial review and because of the state's interest in regulating health professionals and comity.

■ All of the prerequisites for *Younger* abstention exist in this case. First, the state court review initiated by plaintiff was clearly judicial in nature. The fact that he did not pursue it does not entitle him to bring a federal action now. To rule otherwise would open the doors of the federal courthouse to scores of cases whose proper forum is the state court. Second, the proceeding involves the state's strong interest in protecting the health of its citizens by conducting disciplinary proceedings for physicians charged with misconduct. Third, plaintiff clearly had, and still has, the opportunity to raise all procedural challenges regarding the conduct of the administrative hearing and any substantive issues regarding the final administrative decision in the state court proceeding.

Finally, and perhaps most important, plaintiff's state court action has never been formally dismissed, and that court may issue an order restoring the matter to the calendar upon proper showing of reasonable excuse and merit to the proceeding. Based on the record before me, it is quite possible that there is merit to Blake's action. It appears that Blake may have been the victim of a great injustice and been denied the opportunity to practice medicine without just cause. There is no reason why Blake would not receive a thorough and fair adjudication of his claims in state court. In light of *Younger* and its progeny, at this time the proper place for Blake to pursue his claims is in state court.

Blake's claim is not that the administrative procedures have any inherent constitutional infirmities. Rather, his claim is that the Health Commissioner discriminated against him or acted arbitrarily by revoking his license, rather than simply suspending it as recommended by the Hearing Committee. The state court is the proper forum for providing an impartial review of these claims. "[P]laintiff has made no showing of any extraordinary circumstances that require a court of equity to intervene on his behalf and abort the state's attempts to resolve these matters in an orderly and expeditious fashion." *Lang v. Berger,* 427 F.Supp. 204, 215 (S.D.N.Y. 1977). If Blake is not permitted by the state court to continue his action there, it may then be appropriate for him to return to federal court to pursue his claim.

Further, during the pendency of that action, it appears that Blake could apply to have his medical license reinstated. Pursuant to N.Y. Education Law § 6511 and 8 N.Y.C.R.R. 24(1)(c) plaintiff may apply for restoration of his license to practice since more than one year has elapsed from the effective date of the revocation.

*Conclusion*

For the reasons outlined above, defendants' motion to dismiss the complaint is granted.

So ordered.