George Jacob BLAKE, Plaintiff,

v.

George AMBACH, as Commissioner of Education of the State of New York, et al., Defendants.

No. 87 Civ. 4352 (WCC).

United States District Court, S.D. New York.

Dec. 21, 1987.

Lewis Novod, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Raymond J. Foley, Asst. Atty. Gen., of counsel.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

On April 8, 1986, plaintiffs George Blake ("Blake") *et al.* brought an action, pursuant to 42 U.S.C. §§ 1983 and 1985, seeking damages as well as injunctive relief against the revocation of Blake's license to practice medicine in New York and California (*Blake v. Lang*, 669 F.Supp. 584 (1987)). Defendants moved to dismiss the action, pursuant to the *Younger* abstention doctrine, since there was an ongoing state court proceeding in New York's Appellate Division. In an opinion and order dated May 8, 1987, this Court granted defendants' motion and directed plaintiffs to pursue their claims in the ongoing state court proceeding before beginning a new suit in federal court. The Court's opinion noted that "[i]t appears that Blake may have been the victim of a great injustice and been denied the opportunity to practice medicine without just cause. There is no reason why Blake would not receive a thorough and fair adjudication of his claims in state court. In light of *Younger* and its progeny, at this time the proper place for Blake to pursue his claims is in state court." *Id.* at 589.

Plaintiffs thereafter resumed their Article 78 proceeding before the Appellate Division New York. On June 15, 1987, the state court dismissed plaintiff's action, without reaching the merits of the claims, on the grounds that plaintiff had failed to demonstrate a reasonable excuse for the delay in perfecting his previously filed appeal. Accordingly, no state court ever ruled on the propriety of the administrative proceeding in which Blake's medical license was revoked. On June 22, 1987, Blake instituted the present action once again seeking damages as well as injunctive relief against the revocation of his license. On December 4, 1987, defendants moved to dismiss the complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. For the reasons outlined below, defendants' motion is denied.

## Background

Plaintiff received a license to practice medicine in California in 1966 and in New York in 1967. While working as a physician in California, Blake allegedly was the victim of an attempted extortion by Barney Caldwell who, as an investigator for the State of California, threatened to bring criminal charges against Blake if Blake did not make specified payments to Caldwell. When Blake refused to pay Caldwell's extortion demands, Caldwell retaliated by alleging to California law enforcement officials that Blake was defrauding MediCal, California's medical insurance program. As a result of these allegations, criminal proceedings were brought against Blake. Judge Eugene Langhauser, of the Municipal Court of Central Orange County, dismissed the criminal action and found that there was no factual basis for the charges. According to Blake, despite the dismissal, California State authorities proceeded to "book" him to insure a criminal record. Judge Frank, another California Judge, again dismissed all charges against Blake.

These charges by Caldwell evidently also formed the basis for proceedings brought by the California Board of Medical Quality Assurance ("BMQA") against Blake. Prior to the hearing before the BMQA, Blake resigned as a physician in California and notified the BMQA of his decision to do so. Despite the resignation, the California authorities conducted the hearing. Blake allegedly believed that his resignation would result in cancellation of the BMQA hearing regarding his alleged misconduct since he was no longer a licensed physician in California. Neither Blake nor his representatives attended these proceedings, and thus the BMQA was evidently unaware that Caldwell, upon whose recommendation and allegations the charges had been brought, had been found guilty of extortion and was incarcerated. As a result of the hearing, at which Blake's position was unrepresented, Blake's license was revoked.

Approximately three years later, Blake's New York medical license was subject to disciplinary action based on two factors: (1) his California medical license had been revoked; (2) Blake made a false statement to New York medical authorities when, in answering a questionnaire, he represented that his medical license had never been revoked in any other state.

A hearing was conducted before the New York State Department of Health Board for Professional Medical Conduct. At this hearing, Blake was represented by counsel who called witnesses and presented evidence on Blake's behalf. The Hearing Committee found:

(1) the allegations (regarding Blake's alleged misconduct in California and his false statement to New York authorities) are sustained by virtue of the decision by the California Board of Medical Quality Assurance (Ex. 8) and the application for registration in New York (Exs. 3 and 9). The decision by BMQA is dispositive here by virtue of the operation of Collateral Estoppel as expressed by the admission of Respondent's Counsel that they concede that they can not collaterally attack action by another state (T. 41).

(2) the finding with regard … to Respondent's failure to note in his application for registration that his license had been revoked is based upon the fact that the Respondent's claimed lack of knowledge of BMQA's decision and the intermediate proceedings leading up to the revocation was the result of the Respondent's own acts to avoid receipt of any notice of hearing or decision. His departure from California without leaving any notice of change of address to BMQA or even to his attorney can not now be used by him to claim no knowledge of the various proceedings that took place in California.

Based upon their findings, the Committee recommended that the plaintiff's license to practice medicine be suspended for one year, execution of which would be stayed, and that he be fined $5,000.

The Commissioner of Health, upon his review, recommended adoption of the findings of the Hearing Committee but recommended to the Board of Regents revocation of plaintiff's license, instead of a mere one-year suspension and fine.

Pursuant to Education Law § 6510–a(2), a three-person Review Committee of the New York Board of Regents heard the plaintiff's case on October 10, 1984. The Board of Regents adopted the Review Committee's recommendation and the Commissioner of Education thereafter issued an Order revoking the plaintiff's license to practice as a physician.

*Discussion*

Plaintiff's suit is brought pursuant to 42 U.S.C. § 1983. This statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

The sole question presented by Blake's suit is whether the Commissioner of Health and the Board of Regents violated Blake's due process and equal protection rights by disciplining him more severely than the Hearing Committee had recommended, without having heard and seen the witnesses who testified before the Hearing Committee.

*Application of New York's Reciprocity Statute*

The "reciprocity" statute under which the Hearing Committee was acting provides in pertinent part:

> Each of the following is professional misconduct, and any licensee found guilty of such misconduct under the procedures prescribed in section sixty-five hundred ten shall be subject to the penalties prescribed in section sixty-five hundred eleven:
>
> . . . .
>
> (5)(b) Having been found guilty of improper professional practice or professional misconduct by a duly authorized professional disciplinary agency of another state where the conduct upon which the finding was based would, if commit-

ted in New York state, constitute professional misconduct.

Blake maintains that, under color of state law, the defendants discriminated against him and deprived him of his civil rights by ignoring the Hearing Committee's recommendation regarding appropriate disciplinary action and imposing much harsher sanctions against him. To support this contention, Blake has provided the Court with compilations obtained from the Board of Regents, Office of Professional Discipline, which report on disciplinary activities against licensed individuals. In 1984, only two of the Hearing Committee's disciplinary recommendations were increased. One of them was in Blake's case. The other doctor receiving a revocation where a suspension was recommended involved a case where the Committee found that the doctor had been both grossly negligent and grossly incompetent—neither of which was found in Blake's case. Further, the two doctors actually convicted of crimes in 1984 (which Blake was not) only had their licenses suspended and stayed. Indeed, one doctor (claim # 4504) was convicted of attempted murder of his wife by injection of a lethal substance. This offense involved not only attempted murder, but also an abuse of the instrumentalities entrusted to members of the medical profession. The allegations brought against Blake, of which he was *acquitted,* are not nearly as heinous as the crimes for which this other doctor was *convicted.* Yet, Blake's license was revoked while the other doctor was disciplined with a mere fine and a stayed suspension.

The situation was similar in 1985. The only recommendation overturned by the Board of Regents occurred when a doctor who had been convicted of a crime and was a drug user tried to surrender his license, and it was revoked instead. Even doctors convicted of crimes and/or habitual drug users were not subjected to more than a stay and probation. It seems, then, that the treatment which Blake received was unusually harsh, given the circumstances.

The Supreme Court has emphasized that the "fundamental requirement of due pro-

cess is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *E.g. Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The requirements usually depend on the court's evaluation of three factors: the individual's interest at stake, the government's interest in avoiding the encumbrance of additional protest, and the potential contribution of that process to the prevention of erroneous decisions. *See Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. at 903.

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969), a case involving the right of welfare recipients to a pre-termination evidentiary hearing, the court held that the recipients' due process rights entitled them to

timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases. *Id.* at 268, 90 S.Ct. at 1020.

According to Blake, the revocation of his license in California, which led to its revocation in New York, rested on "incorrect or misleading factual premises" resulting from the activity of an extortionist who had been convicted and incarcerated. These contentions by Blake were present in the record upon which each of the state administrative panels relied in reaching their decision. In addition, a letter from Judge Eugene Langhauser, the California Judge who dismissed the criminal complaints against Blake, appeared in the record considered by the administrative board. This letter supported Blake's position and stated that, in Judge Langhauser's view, the charges were unsupportable.

Despite all of this evidence which was placed before the Commissioner of Health, Blake maintains that his constitutional right of due process was violated during the review conducted by the Commissioner. Blake, through his attorney, maintains that "he was allowed minimal access to argue against a reversal of the Hearing Panel's recommendation." In an affidavit submitted to the Court, Commissioner Axelrod summarized the reasons for his recommendation that Blake's license be revoked:

I made this recommendation because I concluded, from my review of the documentary evidence and the plaintiff's own testimony, that he was not truthful in his contention that he was unaware of the proceeding which resulted in the revocation, effective September 11, 1981, of his license to practice medicine in California, and that the charges sustained in the California proceeding were evidence of moral unfitness to practice the profession. I further concluded that the plaintiff wilfully failed to comply with substantial provisions of law governing the practice of the profession, as evidenced by the charges sustained in the California proceeding, and the false statement in the New York registration.

It appears from this affidavit that Blake may not have been given an opportunity to be heard in a meaningful manner at a meaningful time. Mr. Axelrod's statement seems to indicate that he based his decision upon his finding that Blake did not tell the truth when he testified before the Hearing Panel. This finding by Axelrod, made without ever hearing live testimony from Blake, is contrary to the finding of the Hearing Panel, which did hear Blake's testimony and found that "[i]t may be that he did not know of the California revocation but he foreclosed any avenue by which such order could have reached him." Recommendation of the Hearing Panel at 11. The contrary finding by the Commissioner concerning Blake's credibility, without any live testimony, may well have constituted a denial of due process which may have contributed to an erroneous decision and deprived Blake of his significant interest in his medical license. An administrative board ruling on the revocation of a medical license usually must consider both objective and subjective facts in the record and

evidence presented to it. In this case, where the objective facts presented to the committee, namely the results of the adjudication in California, may have been procured through fraud, it seems quite likely that the Hearing Committee placed great emphasis on the subjective facts revealed at the hearing in reaching a determination to recommend that Blake's license be suspended, and that the execution of that penalty be stayed. The Hearing Committee evidently found Blake to be a credible witness. The Commissioner, in rejecting the recommendation of the Hearing Committee, found otherwise without seeing or hearing Blake. By doing so, the Commissioner may have deprived Blake of his significant right to property in the form of a medical license without affording him the due process guaranteed by the Constitution.

The Court is mindful of the overwhelming number of hearings with which administrative bodies in New York are faced every day. Yet Blake's interest in his medical license is so great that he must be given a full opportunity for a meaningful hearing before each panel which has the power to revoke his license. Blake should not be forced to rely on the persuasiveness of written transcripts to convince the Commissioner of the credibility of his testimony. As the Supreme Court noted in *Goldberg v. Kelly, supra,*

> written submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important. Particularly where credibility and veracity are at issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision.

It is true that the Second Circuit Court of Appeals has held, in an unemployment insurance case, that it does not violate due process for the Appeal Board to make a credibility finding contrary to an ALJ's, based on testimonial inferences, without holding another hearing at which it may personally observe demeanor. *Moore v. Ross,* 687 F.2d 604, 608 (2d Cir.1982). But

in so holding, the Court noted that "substantial evidence review (by the state courts) protects against the danger that ultimate administrative factfinders who have not heard the witnesses testify will arbitrarily reverse the credibility findings of ALJ's who have heard the testimony." *Id.* at 609. The Court accordingly held that

> Because the requirement that the Appeal Board's findings rest on substantial evidence already safeguards claimants from erroneous denials of unemployment benefits turning on credibility, the Due Process Clause of the Fourteenth Amendment does not require that the Board provide the additional safeguard of holding de novo hearings before reversing ALJs' credibility determinations. *Id.* at 610.

In this case, however, Blake concedes that the factual findings of the Hearing Committee adopted by the Commissioner were based on substantial evidence showing that there was a California judgment which, without an appearance by Blake, had found him guilty of MediCal fraud. Blake contends, however, that in the penalty determination, the Commissioner abused his discretion by finding, without a hearing, that Blake's version of the facts was not believable and that his license should be revoked instead of merely suspended. Blake believes, no doubt, that had he been given the opportunity for a meaningful hearing before the Commissioner, he would have been able to persuade the Commissioner, in the same way that he persuaded the four members of the Hearing Committee, that the charges lodged against him in California were without basis, that he was truly not aware that his license was revoked in California after he resigned as a physician in that state, and therefore the penalty imposed in New York should be minimal. Any judicial review of the penalty imposed on the recommendation of the Commissioner would, no doubt, be one based on "abuse of discretion" rather than "substantial evidence". Given this restricted review, as compared with the review afforded in *Moore v. Ross, supra,* it is essential that a doctor be provided with a

higher level of due process at the administrative stage so that his license is not revoked without just cause.

*Conclusion*

Since it appears from the record currently before the Court that the Commissioner recommended the revocation of Blake's license without affording him due process, defendants' motion to dismiss the complaint is denied. A status conference will be held on Thursday, January 7, 1988 at 10 a.m. in Room 1902 of this courthouse.

*So ordered.*