**George Jacob BLAKE, Plaintiff,**

v.

**George [Gordon] AMBACH, as Commissioner of Education of the State of New York, David Axelrod, as Commissioner of Health of the State of New York, Martin C. Barell, Harold E. Newcomb and Patrick J. Picariello, the last three defendants comprising the University of the State of New York Regents Review Committee, and defendants denoted as John Does and Jane Does, their true names presently unknown to plaintiff, who are employees of the State of New York and its departments and agencies, Defendants.**

No. 87 Civ. 4352 (WCC).

United States District Court,
S.D. New York.

July 28, 1988.

Lewis Novod, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Howard L. Zwickel, Chief, Litigation Bureau, Raymond J. Foley, Judith A. Gordon, Asst. Attys. Gen., John M. Fasone, Legal Asst., of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

On April 8, 1986, plaintiffs George Blake ("Blake") et al. brought an action, pursuant to 42 U.S.C. §§ 1983 and 1985, seeking damages as well as injunctive relief against the revocation of Blake's license to practice medicine in New York and California (Blake v. Lang, 669 F.Supp. 584 (1987). Defendants moved to dismiss the action on the ground that, pursuant to the Younger abstention doctrine, the claim should have been presented to the state court. In an opinion and order dated April 8, 1987, this Court granted defendants' motion.

Plaintiffs thereafter instituted a proceeding under Article 78 of the New York CPLR before the Appellate Division of the New York Supreme Court. On June 15, 1987, the state court dismissed that proceeding without reaching the merits of the claims, on the ground that plaintiffs had failed to demonstrate a reasonable excuse for the failure to pursue their prior Article 78 proceeding.

On June 22, 1987, Blake instituted the present action once again seeking damages as well as injunctive relief against the revocation of his license. On December 21, 1987, 691 F.Supp. 646, this Court denied defendant's motion to dismiss. Familiarity with that opinion is presumed. Defendants have now moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. In support of their motion, defendants have filed a statement pursuant to local civil rule 3(g). Since Blake has not filed any response thereto, all the material allegations set forth therein are deemed admitted. For the reasons set forth below, defendants' motion for summary judgment is granted.

*Background*

Blake received a license to practice medicine in California in 1966 and in New York in 1967. While working as a physician in California, Blake apparently was the victim of an attempted extortion by Barney Caldwell who, as an investigator for the State of California, threatened to bring criminal charges against Blake if Blake did not make specified payments to Caldwell. When Blake refused to meet Caldwell's extortion demands, Caldwell retaliated by alleging to California law enforcement officials that Blake was defrauding MediCal, California's medical insurance program. As a result of these allegations, criminal proceedings were brought against Blake. Judge Eugene Langhauser, of the Municipal Court of Central Orange County, dismissed the criminal action and found that there was no factual basis for the charges. According to Blake, despite the dismissal, California State authorities proceeded to "book" him to insure a criminal record. Judge Frank, another California Judge, again dismissed all charges against Blake.

These charges by Caldwell evidently also formed the basis for disciplinary proceedings brought against Blake by the California Board of Medical Quality Assurance ("BMQA"). Prior to the hearing before the BMQA, Blake resigned as a physician in California and notified the BMQA of that action. Despite the resignation, the BMQA proceeded with the hearing. Blake allegedly believed that his resignation would result in cancellation of the BMQA hearing, and neither he nor his representatives attended the hearing. Thus, the BMQA was evidently unaware that Caldwell, upon whose recommendation and allegations the

charges had been brought, had been found guilty of extortion and was incarcerated. The hearing therefore resulted in the revocation of Blake's license to practice medicine in California.

Approximately three years later, Blake's New York medical license was subject to disciplinary action on two grounds: (1) his California medical license had been revoked; (2) Blake made a false statement to New York medical authorities when, in answering a questionnaire, he represented that his medical license had never been revoked in any other state.

A hearing was conducted before the New York State Department of Health Board for Professional Medical Conduct. At this hearing, Blake was represented by counsel who called witnesses and presented evidence on Blake's behalf. The Hearing Committee found:

(1) the allegations (regarding Blake's alleged misconduct in California and his false statement to New York authorities) are sustained by virtue of the decision by the California Board of Medical Quality Assurance (Ex. 8) and the application for registration in New York (Exs. 3 and 9). The decision by BMQA is dispositive here by virtue of the operation of Collateral Estoppel as expressed by the admission of Respondent's Counsel that they concede that they can not collaterally attack action by another state (T. 41).

(2) the finding with regard ... to Respondent's failure to note in his application for registration that his license had been revoked is based upon the fact that the Respondent's claimed lack of knowledge of BMQA's decision and the intermediate proceedings leading up to the revocation was the result of the Respondent's own acts to avoid receipt of any notice of hearing or decision. His departure from California without leaving any notice of change of address to BMQA or even to his attorney can not now be used by him to claim no knowledge of the various proceedings that took place in California.

Based upon these findings, the Committee recommended that Blake's license to prac-

tice medicine be suspended for one year, execution of which would be stayed, and that he be fined $5,000.

The Commissioner of Health, upon his review, recommended adoption of the findings of the Hearing Committee but recommended to the Board of Regents revocation of Blake's license, instead of a mere one-year suspension and fine.

Pursuant to Education Law § 6510-a(2), a three-person Review Committee of the New York Board of Regents heard Blake's case on October 10, 1984. The Board of Regents adopted the Review Committee's recommendation and the Commissioner of Education thereafter issued an Order revoking Blake's license to practice as a physician. Blake thereafter brought an Article 78 proceeding in New York Supreme Court Appellate Division challenging this ruling, but abandoned that proceeding after his motion for a preliminary injunction was denied. Blake's subsequent attempt to revive the Article 78 claim was denied for failure to show reasonable excuse for the initial abandonment of the action.

*Discussion*

The present action is brought pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

The sole question presented by Blake's suit is whether the Board of Regents violated Blake's rights to due process and equal protection under law when it revoked his medical license. Turning first to Blake's due process claim, Blake maintains that he did not receive a full opportunity to be heard at the administrative level. Specifically, Blake maintains that his due process rights were violated when the Commissioner of Health, without holding any hearings, ignored the recommendation of

the Hearing Committee and recommended to the Board of Regents that Blake's license be revoked.

Under New York law, the ultimate decision concerning professional licensing matters rests with the Board of Regents, not with the Hearing Panel or the Commissioner of Health. In Blake's case, on August 11, 1984 the Commissioner of Health issued a report to the Board of Regents recommending that Blake's license be revoked. Thereafter, on October 10, 1984, Blake appeared before a Review Committee of the New York State Board of Regents. The Committee consisted of defendants Barrell, Newcomb and Picariello. Blake appeared personally with his attorney David J. Agatstein. Both Blake and the Office of Professional Medical Conduct were permitted to make oral and written submissions to the Committee.

Blake submitted to the Committee a letter from his former attorney from California, Roger Jon Diamond, who claims that he told plaintiff on May 14, 1981 that the California disciplinary proceeding against him would begin on June 3, 1981. On June 1, 1981, Blake telephoned his California attorneys to inform them that he would not return to California for the disciplinary hearing. Diamond noted that his law firm never received any notice as to what, if anything, transpired at Blake's disciplinary hearing. Moreover, Diamond knows of no one who contacted Blake to inform him of the outcome of the proceeding.

Blake also submitted to the Review Committee a 32-page legal brief prepared by his attorney Agatstein. In the brief, it was argued that Blake could not have committed a fraudulent practice when he answered "no" to a question on the registration form for his New York medical license which asked whether any other state had revoked or suspended his professional license because he did not then know that his California license had been revoked. It was also argued that the Commissioner of Health violated Blake's due process rights when he held, without hearing Blake's testimony or observing his demeanor, that his acts in California and New York evidenced a lack of veracity. Finally, the brief maintained that the penalty recommended by Commissioner Axelrod—revocation of Blake's license with leave to apply for reinstatement in one year and a $5,000 fine—was grossly disproportionate to Blake's misconduct. The attorney cited the dismissal of the California criminal charges against Blake, Blake's otherwise unblemished record in New York, the poor health he suffered as the result of the California proceedings, and the personal anguish and tremendous family strains he had already suffered in New York.

The office of Professional Medical Conduct submitted a letter to the Committee arguing that Blake's "no" answer on the registration form for his New York medical license was a fraudulent practice. The Office contended that even if Blake did not know that his California medical license had been revoked when he executed the form, he did know that his license was in jeopardy and thus was obliged to answer the question "I don't know."

In addition to these newly-submitted items, the Committee also had before it all of the documents submitted at prior stages of the proceedings. On November 30, 1984, after reviewing all of this evidence, the Committee issued a written report to the Board of Regents. It recommended that Blake's license be revoked on each of the specifications for which a guilty finding was recommended but that no fine be imposed. On December 14, 1984, the Board of Regents, by unanimous vote, accepted the report of the Committee and ordered that its recommendations be implemented. Thereafter, Blake commenced the Article 78 proceeding which was subsequently abandoned.

■ It is well settled that the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *E.g. Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). According to Blake, the revocation of his license in California, which led to its revocation in New York, rested on incorrect or misleading factual premises contrived by

an extortionist who has been convicted and incarcerated. Yet these contentions by Blake were present in the record upon which each of the state administrative panels relied in reaching their decision. In addition, a letter from Judge Eugene Langhauser, who dismissed the criminal complaint against Blake in California, appeared in the record considered by the administrative board. This letter bolstered Blake's position and stated that, in Judge Langhauser's view, the criminal charges against Blake had no basis in fact.

 While this Court is profoundly sympathetic with Blake's position, it lacks the authority to alter the ruling of a state administrative body which reached its decision after according Blake the due process to which he was entitled. Section 1983, which provides federal jurisdiction in this action, vests the Court with the power to determine whether a person, acting under color of state law, has deprived another person of rights secured by the Constitution and laws. The role of a federal court, under Section 1983, in reviewing the state's revocation of a medical license is a limited one: "to determine only whether the state has provided adequate avenues of redress to review and remedy arbitrary action." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 888 (2d Cir.1987), *citing Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 534–36, 104 S.Ct. 3194, 3204–09, 82 L.Ed.2d 393 (1986). Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was wrong or even whether it was arbitrary and capricious. *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.) *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). As the Court of Appeals recognized in *Moore, supra,* it is clear that an Article 78 proceeding is an adequate state procedure for protecting the property interest in a professional license. Indeed, as in *Moore,* Blake initially availed himself of this procedure by commencing an Article 78 proceed-

ing to challenge the revocation, only to abandon it after the court denied him injunctive relief.

Given the considerable volume of evidence which the administrative board received, and the numerous opportunities afforded to Blake at numerous stages during the administrative proceedings to submit further written and oral testimony before the Board of Regents reached its final decision, it is clear that Blake received all the process which is due under the Constitution. Blake received opportunities to be heard at all critical stages of the proceedings. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). He had timely and adequate notice detailing the reasons for the proposed revocation of his medical license, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. *Goldberg v. Kelly*, 397 U.S. 254 at 268–69, 90 S.Ct. 1011 at 1020–21, 25 L.Ed.2d 287 (1970). Blake and his counsel were given the opportunity to address the administrative board at each successive stage of the proceedings. All of the evidence favorable to Blake which he has brought to the attention of the Court was included in the record before the Board of Regents.

 Moreover, Blake's contention that the ultimate factfinder in an administrative proceeding must hear the witnesses testify has been repeatedly rejected by the Court of Appeals for the Second Circuit. As Judge Friendly wrote in *Utica Mutual Insurance Co. v. Vincent*, 375 F.2d 129, 131 (2d Cir.), *cert. denied*, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967),

> Utica finds in the due process clause of the Fifth Amendment a requirement that when there are issues of credibility, as was assumed to be true here, no determination of fact may be made unless the decider has either seen the witnesses himself or has been furnished with a report as to credibility by another who has ... We discern no such absolute in the history laden words of the Fifth Amendment; Utica would freeze what is

usually a sensible rule of judicial administration into a constitutional imperative. *See also Moore v. Ross,* 687 F.2d 604 (2d Cir.1982).

■ Finally, Blake's contention that the discipline imposed was excessive as compared to other disciplinary sanctions is unpersuasive in light of the circumstances. The charges which resulted in the revocation of Blake's license in California—Medi-Cal fraud and abuse of prescription writing privileges for controlled drugs—are sufficiently serious to warrant revocation of a medical license. *See e.g. Matter of Widlitz,* 77 A.D.2d 690 (3d Dept.1980) *lv. to app. den.* 51 N.Y.2d 706, 433 N.Y.S.2d 1025, 412 N.E.2d 1327 (1980); *Matter of Sasson,* 127 A.D.2d 875, 511 N.Y.S.2d 696 (3d Dept.1987); *Matter of Erdos,* 105 A.D.2d 504, 481 N.Y.S.2d 457 (3d Dept.1984) *lv. to app. den.* 64 N.Y.2d 604, 485 N.Y.S.2d 1029, 475 N.E.2d 476 (1985). While Blake was acquitted of the related criminal charges, his failure to defend the disciplinary proceeding and his abrupt departure from California leave troubling doubts as to whether there may have been a factual basis for the extortioner's threats of exposure. In any event, a deliberate misstatement concerning the prior revocation of a medical license has been considered a legitimate ground for revocation. *Matter of Bueno v. Ambach,* 82 A.D.2d 935, 440 N.Y.S.2d 752 (3d Dept.1981), *lv. to app. den.* 54 N.Y.2d 610, 445 N.Y.S.2d 1028, 430 N.E.2d 1322 (1981); *See also Matter of Nicholson v. Ambach,* 80 A.D.2d 690, 436 N.Y.S.2d 465 (3d Dept.), *app. dis.* 55 N.Y.2d 601, 446 N.Y.S.2d 1024, 431 N.E.2d 309 (1981); *Matter of Lazachek v. Board of Regents,* 101 A.D.2d 639, 475 N.Y.S.2d 160 (3d Dept.), *lv. to app. den.* 63 N.Y.2d 608, 483 N.Y.S.2d 1023, 472 N.E.2d 1043 (1984).

For the reasons outlined above defendants' motion for summary judgment is granted.

So ordered.