**John DOE, M.D., Plaintiff–Appellant,**

v.

**STATE OF CONNECTICUT, DEPARTMENT OF HEALTH SERVICES, and Connecticut Medical Examining Board, Defendants–Appellees.**

**No. 625, Docket 95–7541.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 22, 1995.

Decided Jan. 5, 1996.

As Amended on Denial of Rehearing
Jan. 30, 1996.

H. Thomas Howell, Howell, Gately, Whitney & Carter, Towson, MD (William I. Garfinkel, Carmody & Torrance, Waterbury, CT, and John S. Bainbridge, Jr., Howell, Gately, Whitney & Carter, Towson, MD, on the brief), for Plaintiff–Appellant John Doe, M.D.

Judith A. Merrill, Assistant Attorney General, State of Connecticut, Hartford, CT, (Jane D. Comerford, Assistant Attorney General, on the brief), for Defendants–Appellants State of Connecticut, Department of Health Services and Connecticut Medical Examining Board.

Before: JACOBS, CALABRESI, Circuit Judges, and SPATT, District Judge.*

PER CURIAM:

Plaintiff-appellant John Doe, M.D., an admitted drug abuser and alcoholic who has previously been disciplined for engaging in sexual relations with his patients, claims that the State of Connecticut threatens to violate his rights under the Americans with Disabilities Act by bringing disciplinary proceedings directed to the revocation of his medical license. Doe commenced his action against defendants-appellees State of Connecticut, the Connecticut Department of Health Services and the Connecticut Medical Examining Board (collectively, the "State"), seeking declaratory and injunctive relief pursuant to Title II of the Americans With Disabilities Act, § 504 of the Rehabilitation Act of 1973 and 42 U.S.C. § 1983. Doe appeals from a Judgment of the United States District Court for the District of Connecticut (Dorsey, *Chief J.*) granting summary judgment in

---

* Hon. Arthur Spatt, United States District Judge for the Eastern District of New York, sitting by designation.

favor of the State on the grounds that (i) Doe failed to show irreparable harm warranting injunctive relief and (ii) Doe's claim was not ripe for adjudication.

We affirm the judgment of the district court, but on different grounds.

## BACKGROUND

From 1970 to 1987, John Doe, M.D., practiced psychiatry in Connecticut, where he was licensed to practice medicine. In 1987, Doe was sued by a former patient who alleged that Doe had engaged in sexual relations with her. This lawsuit led to an investigation by the Connecticut Department of Health Services and the Medical Examining Board (an agency within the Department of Health Services that is authorized by Connecticut law to conduct disciplinary proceedings to restrict or revoke medical licenses). Later that year, coincidentally, Doe experienced health problems that required him to move to Arizona, where he was also licensed to practice medicine and where he has since resided. The Connecticut investigation continued after Doe left the state. In 1990, the Medical Examining Board and the Department of Health Services entered into a consent agreement with Doe pursuant to which Doe did not contest that he had given "a sexually explicit novel" to one patient, "engaged in sexual relations with one or more patients," and "breached the confidentiality of his therapeutic relationship with one or more patients."

Since Doe's conduct was grounds for discipline under Connecticut law, see Conn.Gen.Stat. § 20–13c(3), his license to practice medicine in Connecticut was suspended for three years, commencing October 28, 1989. Pursuant to the consent agreement, Doe was required to undergo psychotherapy until October 28, 1993. On September 14, 1990, an Arizona psychotherapist agreed to treat Doe and to report Doe's progress to the Connecticut Department of Health Services and the Medical Examining Board.

As part of his therapy, Doe was placed on Prozac, Desyrel, Xanax and other anti-depressants, but continued to practice psychiatry. On February 14, 1991, upon learning that Doe's Connecticut license had been suspended, the Arizona Board of Medical Examiners placed Doe on probation and suspended his Arizona medical license pending an investigation. Evidently Doe's progress with his psychotherapist was not what had been hoped. On March 13, 1991, he checked into the Menninger Clinic in Topeka, Kansas, for "evaluation and treatment of major depression by past alcohol use." From March to September, 1991, Doe was examined by a half-dozen doctors. During treatment, he admitted (among other things) to abusing prescription painkillers and alcohol and to drinking prior to seeing patients.

On October 28, 1991, Doe entered into a consent agreement with the Arizona Board of Medical Examiners. The Arizona consent agreement provides that Doe may continue to practice medicine, provided that his cases are reviewed by a psychiatrist four times each year, that he participates in a twelve-step recovery program, and that he abstains from the consumption of alcohol and all drugs.

On April 3, 1992, after receiving a copy of the Arizona consent agreement, the Connecticut Department of Health Services initiated its own investigation to determine whether to institute formal proceedings against Doe to revoke his license. The Department asserted that it had grounds for restricting, suspending or revoking his license under Connecticut law because Doe had "1) abus[ed] alcohol, 2) abus[ed] sedative hyprotic or anxilytics [drugs], and 3) suffer[ed] from major depression." See Conn.Gen.Stat. § 20–13c(2) & (3) (authorizing Medical Examining Board to take action against medical license where doctor is mentally ill or abuses drugs or alcohol).

On August 17, 1992, Doe and the Division of Medical Quality Assurance (another division of the Department of Health Services) agreed to a proposed consent order pursuant to which Doe would be placed on probation and required to adhere to the terms of the Arizona consent order. On September 1, 1992, Doe entered into a pre-hearing agreement with the Division of Medical Quality Assurance which stipulated (a) that the Connecticut Medical Examining Board had final

discretion over the approval of any proposed consent order, and that any such order would not be subject to judicial review; (b) that the Medical Examining Board could review all documents and facts relevant to the case against Doe; and (c) that if the Medical Examining Board rejected any proposed consent order, the case would proceed to a formal hearing before the Board. On September 15, 1992, the Medical Examining Board rejected the proposed consent order and voted to change the proposed period of probation to suspension. On October 8, 1992, Doe and the Division of Medical Quality Assurance agreed on a modified consent order pursuant to which Doe's Connecticut medical license would be suspended for four years. On November 17, 1992, the Medical Examining Board again rejected the proposed consent order, this time because it did not include a provision revoking Doe's Connecticut license.

Because the parties could not agree to a consent order, on March 26, 1993, the Medical Examining Board commenced a formal investigation by issuing a "Statement of Charges" against Doe pursuant to Connecticut law. *See* Conn.Gen.Stat. §§ 19a–9 & 19a–14(10) (authorizing Department of Health Services to investigate possible violations by doctors of state statutes or health regulations). The Statement alleged that "during 1990 and 1991 [Doe] abused alcohol," and that Doe suffers from "major depression" or "post traumatic stress disorder," both of which are grounds for restricting or revoking a medical license under Connecticut law if the physician "poses a threat, in his practice of medicine, to the health and safety of any person." Conn.Gen.Stat. § 20–13c. The Statement recommended that the Medical Examining Board revoke Doe's Connecticut medical license.

On April 29, 1993, Doe filed this action in the district court seeking (in addition to declaratory relief and attorneys' fees) a permanent injunction to prevent the Medical Examining Board from holding a hearing to determine his fitness to practice medicine. Doe's complaint alleged that, by virtue of his alcohol and drug problems, he is a "qualified individual with a disability" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2) (the "ADA"). Title II prohibits a state or any of its subdivisions from discriminating against qualified individuals with disabilities. *Id.* § 12132. According to the complaint, such a hearing would violate Doe's rights under the ADA by "imposing and applying criteria that discriminate on the basis of disability." On March 9, 1995, the district court issued a five-page opinion and order denying Doe's motion for summary judgment and granting the State's motion for summary judgment.

On March 17, 1995, Doe moved for reconsideration of the district court's order. On May 15, 1995, the district court entered an endorsement decision granting Doe's motion for reconsideration, but adhering to its March 17, 1995 order. On June 2, 1995, Doe filed a timely notice of appeal. Since March 1993, the State has taken no further action against Doe and is awaiting the outcome of this litigation before commencing formal proceedings.

## DISCUSSION

■■■■ This Court reviews an order of a district court granting summary judgment *de novo*. *Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 466–67 (2d Cir.1995); *Connecticut Hosp. Ass'n v. Weicker,* 46 F.3d 211, 216 (2d Cir. 1995). In reviewing a motion for summary judgment, all ambiguities and inferences must be resolved in favor of the party opposing the motion. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587–587, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *see also* Fed.R.Civ.P. 56(d).

■■■ The district court dismissed the complaint because Doe had not shown that injunctive relief was warranted and, in the alternative, because Doe's claim was not ripe. We conclude that many of the considerations identified by the district court in support of those determinations justify abstention based on the concerns of federalism and comity expressed in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■■■ Under the *Younger* abstention doctrine, "interests of comity and federalism counsel federal courts to abstain from juris-

diction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984); *see also Younger*, 401 U.S. at 45, 91 S.Ct. at 751 ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). Abstention is warranted where a state judicial proceeding is ongoing, implicates important state interests, and affords an adequate opportunity to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2520–21, 73 L.Ed.2d 116 (1982). All three of the conditions justifying abstention are satisfied here.

### A. *Ongoing State Judicial Proceeding.*

*Younger* involved a criminal judicial proceeding, but subsequent decisions have made clear that the same concerns of federalism and comity warrant abstention where state administrative disciplinary proceedings (like the one at issue here) are ongoing. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986) (abstention warranted where private school sought to enjoin ongoing state disciplinary proceedings against it); *Middlesex County*, 457 U.S. at 437, 102 S.Ct. at 2524 (abstention warranted where lawyer sought to enjoin ongoing state disciplinary proceedings against him and where lawyer had right to appeal administrative decision to state courts); *Gibson v. Berryhill*, 411 U.S. 564, 576–77, 93 S.Ct. 1689, 1696–97, 36 L.Ed.2d 488 (1973) ("[A]dministrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings....").

### B. *Important State Interest.*

These same cases recognize that state disciplinary proceedings implicate (and vindicate) important state interests. *See, e.g., Dayton Christian*, 477 U.S. at 628, 106 S.Ct. at 2723 (important state interest in preventing discrimination); *Middlesex County*, 457 U.S. at 438, 102 S.Ct. at 2524 ("The traditional and primary responsibility of state courts for establishing and enforcing standards for members of their bars and the quasi-criminal nature of bar disciplinary proceedings call for exceptional deference by federal courts.") (Brennan, J., concurring) (citation omitted); *Geiger v. Jenkins*, 316 F.Supp. 370, 373–74 (N.D.Ga.1970) (state has important interest in regulating and controlling practice of medicine), *aff'd mem.*, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971) (citing *Younger*). Connecticut's legislative scheme for disciplining doctors serves important and obvious public health objectives.

### C. *Adequate Opportunity To Raise ADA Claims.*

Doe provides no evidence that the Medical Examining Board has prevented (or will prevent) him from raising his federal concerns in the hearing before it. "In any event, it is sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Dayton Christian*, 477 U.S. at 629, 106 S.Ct. at 2724 (citation omitted). This same reasoning applies *a fortiori* to federal statutory claims. Connecticut law provides that an appeal may be taken from final agency action to the Connecticut Superior Court. *See* Conn.Gen.Stat. § 4–183(a). An appeal may also be taken from preliminary agency action if postponement of the appeal may result in an inadequate remedy. *Id.* § 4–183(b). On appeals from agency actions, the Connecticut courts have addressed claims based on federal statutes and state and federal constitutional law. *See Daly v. DelPonte*, 225 Conn. 499, 624 A.2d 876 (1993) (addressing claims under state and federal constitutional law); *Griffin Hosp. v. Comm'n on Hosps. and Health Care*, 200 Conn. 489, 493–95, 512 A.2d 199, 203–04 (considering whether federal medicare statute preempted administrative agency from regulating costs at medical facilities), *appeal dismissed*, 479 U.S. 1023, 107 S.Ct. 781, 93 L.Ed.2d 819 (1986). Connecticut law therefore affords Doe an adequate means of addressing any asserted violations of federal law that may occur in the course of the Medical Examining Board hearing.

. ▮ Doe argues (in his reply brief) that Title II of the Americans with Disabilities Act is sufficiently broad to preempt the concerns of comity and federalism that otherwise might warrant abstention. Yet Doe provides no authority for this proposition, and we find it unpersuasive. Doe can interpose the ADA as a defense in the ongoing state proceedings, and can secure reversal of any determination that conflicts with the ADA in the courts of Connecticut and (ultimately) in the United States Supreme Court. Alternatively, Doe argues that *Younger* abstention is not warranted where state proceedings are brought in bad faith or for harassment purposes. *See Middlesex County*, 457 U.S. at 437, 102 S.Ct. at 2524; *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994). While this is undoubtedly true, the fact that the Medical Examining Board rejected two proposed consent orders does not necessarily support the conclusion that it has acted in bad faith. *See Kenneally v. Lungren*, 967 F.2d 329, 334 (9th Cir.1992), ("[R]efusal to settle, standing alone, cannot be construed as an indication of bias."), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). Nor can Doe point to any other evidence showing that the disciplinary proceedings—brought by an administrative body charged with the protection of the public health on the basis of overwhelming evidence showing Doe's unprofessional conduct and habits—were initiated against him vexatiously.

## CONCLUSION

The decision of the district court is AFFIRMED for the reasons set forth herein.