**Thomas F. MORAN, Plaintiff,**

v.

**CONNECTICUT DEPARTMENT OF PUBLIC HEALTH AND ADDITION SERVICES, et al., Defendants.**

**Civil No. 3:96cv448 (PCD).**

United States District Court,
D. Connecticut.

Jan. 29, 1997.

Michael D. Neubert, Neubert, Pepe & Monteith, New Haven, CT, Carl E. Person, New York City, for Plaintiff.

Edward F. Osswalt, Attorney General's Office, Health & Human Services, Hartford, CT, Robert A. Whitehead, Jr., Attorney General's Office, Hartford, CT, for Defendants.

### RULING ON MOTION TO DISMISS

DORSEY, Chief Judge.

Defendants Connecticut Department of Public Health and Addiction Services, et al, ("Defendants") move to dismiss Plaintiff Thomas F. Moran's ("Plaintiff") Complaint in its entirety. For the following reasons, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**[1]

## I. BACKGROUND

Plaintiff is a physician in the field of internal medicine. Plaintiff began his medical career in Michigan. In or about May 1990, Plaintiff suffered an epileptic seizure. Shortly thereafter, Plaintiff was notified that he was under investigation by the Michigan Board of Medicine ("Michigan Board") for "professional misconduct." Practicing medicine with a "physical or mental disability" constitutes "professional misconduct" under Michigan law. On March 8, 1991, the Michigan Board filed an administrative complaint for professional misconduct against Plaintiff. After Plaintiff refused a psychiatric evaluation[2] his counsel allegedly informed the Michigan Board that Plaintiff was resigning his license to practice medicine in the State of Michigan effective immediately and that Plaintiff had no intention of renewing his license, which was scheduled to expire on January 31, 1992.

During the week of March 1, 1992, the Michigan Board conducted a hearing concerning Plaintiff's condition, which Plaintiff did not attend. On June 1, 1992, the Michigan Board issued a "final order" finding Plaintiff guilty of professional misconduct under Michigan Health Code § 16221, based on Plaintiff's epilepsy and Plaintiff's refusal to submit to a psychiatric examination. The Michigan Board suspended Plaintiff's license for six months and one day.

1. Defendants submitted materials outside of the pleadings in support of their Motion to Dismiss. When confronted with this situation the "court must either disregard such material or give the parties notice that the motion is being converted to one for summary judgment and permit the parties to submit evidence accordingly." *Kopec v. Coughlin,* 922 F.2d 152, 155–56 (2d Cir.1991). In this case, the evidence submitted by Defendants will be disregarded and the motion will be treated as a 12(b)(6) motion to dismiss.

2. Plaintiff instead requested an examination by an independent neuro-psychiatrist, which request was allegedly denied by the Michigan Board.

Information regarding Michigan's suspension of Plaintiff's license was forwarded by the National Practitioner's Data Bank—a nationwide data bank on physician malpractice operated by the federal government—to the medical authorities in Connecticut where Plaintiff also held a medical license. On October 5, 1995, defendant Connecticut Department of Health moved in accordance with Connecticut law that defendant Connecticut Medical Examining Board suspend Plaintiff's Connecticut license pending a hearing on the revocation or suspension. The basis for the motion was the charge and "final order" of the Michigan Board that Plaintiff's Michigan medical license was suspended. Conn.Gen.Stat. § 19a–17(a)(7)(B), § 20–13c. On October 17, 1995, defendant Connecticut Medical Examining Board suspended Plaintiff's license. A hearing was scheduled for November 7, 1995. At Plaintiff's request the hearing was postponed until February 1996. Again, at Plaintiff's request, the hearing was postponed until June 25, 1996. The hearing was postponed several additional times at Plaintiff's request. The hearing is currently to be rescheduled.

Defendants move to dismiss Plaintiff's Complaint asserting that: (1) the Court must abstain from interfering with a pending state administrative proceeding; (2) Plaintiff failed to allege sufficient personal involvement by Defendants to support Plaintiff's claims against them in their individual capacities,[3] and (3) Defendants have absolute immunity from suit in their individual capacities.

## II. *DISCUSSION*

### A. *Standard of Review*

■ A motion to dismiss should be granted only when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). "In determining the motion the Court shall consider only those facts that appear on the face of the complaint." *Williams v. Avco Lycoming,* 755 F.Supp. 47, 49 (D.Conn.1991) (citation omitted). All facts alleged in the complaint are presumed to be true and are considered most favorably to the non-movant. *Id.*

### B. *Abstention*

Defendants move to dismiss under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[4] Plaintiff asserts that abstention is inappropriate because he is not seeking to enjoin pending state proceedings.

"Abstention [under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ] is warranted where a state judicial proceeding is ongoing, implicates important state interests, and affords an adequate opportunity to raise constitutional challenges." *Doe v. State of Conn. Dept. of Health Services,* 75 F.3d 81, 85 (2d Cir.1996) (citation omitted). In this case, state administrative disciplinary proceedings are ongoing. Although *Younger* involved an ongoing state criminal proceeding it is "clear that the same concerns of federalism and comity warrant abstention where state administrative disciplinary proceedings ... are ongoing." *Doe,* 75 F.3d at 85 (citations omitted).

■ A state's interest in its legislative scheme for regulating the practice of medicine implicates important state interests that justify abstention. "[S]tate disciplinary proceedings implicate (and vindicate) important state interests," and "Connecticut's legislative scheme for disciplining doctors serves important and obvious public health objectives." *Id.* The current state agency action affords Plaintiff an adequate opportunity to raise his federal claims and constitutional challenges. *Id.* Parties are not precluded from raising federal concerns in administrative hearings. *Id.* In addition, both federal statutory and constitutional claims may be raised in state-court judicial review of administrative proceedings. *Id.* Under Connecti-

---

**3.** Since Plaintiff's claims against Defendants in their individual capacities are dismissed on other grounds, this issue need not be addressed.

**4.** Because *Younger* abstention is dispositive, *Burford* abstention is not addressed.

cut law "an appeal may be taken from final agency action to the Connecticut Superior Court." *Id.* (citing Conn.Gen.Stat. § 4-183(a)). "On appeals from agency actions, the Connecticut courts have addressed claims based on federal statutes and state and federal constitutional law." *Doe,* 75 F.3d at 85.

▇ Pursuant to *Doe,* a case substantially similar to Plaintiff's, *Younger* abstention is warranted. However, Plaintiff's entire Complaint is not subject to dismissal on abstention grounds. A district court may not dismiss a common-law damages action. *Quackenbush v. Allstate Insurance Co.,* — U.S. —, —, 116 S.Ct. 1712, 1728, 135 L.Ed.2d 1 (1996). "[F]ederal courts have the power to dismiss or remand cases based on abstention only where the relief being sought is equitable or otherwise discretionary." *Id.* at —, 116 S.Ct. at 1728. "[T]he authority of a federal court to abstain from exercising its jurisdiction extends to ... cases in which the court has discretion to grant or deny relief." *Id.* at —, 116 S.Ct. at 1722. The abstention doctrines are generally applicable to cases seeking injunctive relief and actions seeking a declaratory judgment. *Id.* at —, 116 S.Ct. at 1722. *See also Samuels v. Mackell,* 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1970) (extending abstention to declaratory judgments).

▇ In this case, three counts are based on alleged violations of federal statutory law: (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* (2) the Rehabilitation Act, 29 U.S.C. § 794; and (3) the Civil Rights Act, 42 U.S.C. § 1983. Plaintiff seeks compensatory and punitive damages on each count. Plaintiff also seeks "[a] full restoration of plaintiff's license to practice medicine in the State of Connecticut," complaint ¶ D, and a declaratory judgment under 28 U.S.C. § 2201 "that the acts and practices of defendants in effectively denying plaintiff's right to practice medicine in the State of Connecticut are unconstitutional both on their face and in their application to plaintiff." Complaint ¶ E. Plaintiff's claim to have his license restored seeks equitable relief. Similarly, his request for declaratory judgment under 28 U.S.C. § 2201 is a form of equitable relief or is otherwise discretion-

ary. Accordingly, as to those claims abstention is proper and they are dismissed.

Plaintiff's claims for money damages, however, standing alone are not subject to abstention. *Quackenbush,* — U.S. at —, 116 S.Ct. at 1728. However, the claim for damages is intertwined with the request for declaratory judgment. Plaintiff alleges in support of his § 1983 claim:

> said action and policy, as well as the legislation on which said action and policy is premised and based, in addition to being defectively vague, constitutionally overly broad and violative of existing federal law, is not so related to any rational legislative objective that said policy and practice can be used to create a classification of individuals with every conceivable mental or physical deficit and collectively deprive them, in whole or in part, of the benefits of the medical license simply because said mental or physical deficit might, to a greater or lesser degree, impair them in the practice of their profession.

Complaint ¶ 69.

In a similar situation, *Quackenbush* was held to indicate "that a plaintiff's incidental assertion of a general claim for damages will not suffice to prevent the dismissal of a § 1983 case where the damages sought cannot be awarded without first declaring unconstitutional a state court judgment on a matter firmly committed to the states." *Amerson v. State of Iowa,* 94 F.3d 510, 513 (8th Cir.1996) (citation omitted), *cert. denied,* — U.S. —, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). The *Amerson* conclusion was based on the Supreme Court's recognition in *Quackenbush* of the continued validity of the holding in *Fair Assessment in Real Estate, Ass'n Inc. v. McNary,* 454 U.S. 100, 115, 102 S.Ct. 177, 185, 70 L.Ed.2d 271 (1981), which involved a § 1983 claim for damages based on the allegedly unconstitutional application of a state tax scheme. A dismissal was sustained on the basis that "[t]he recovery of damages under the Civil Rights Act first requires a 'declaration' or determination of the unconstitutionality of a state tax scheme that would halt its operation." *Fair Assessment,* 454 U.S. at 115, 102

S.Ct. at 185.[5] Relying on *Quackenbush* and *Fair Assessment,* in *Amerson* the plaintiff's damages claim was dismissed on the basis that the "claims in effect require a preliminary declaration that the state court judgment terminating her parental rights is invalid." *Amerson,* 94 F.3d at 513.

Plaintiff's claim under § 1983 is based entirely on his assertion that Connecticut's scheme for disciplining doctors is unconstitutional. He cannot be awarded damages without a preliminary declaration that Connecticut law is unconstitutional. Accordingly, Plaintiff's claim for damages under § 1983 must also be dismissed.[6]

Although Plaintiff's claims for damages under the ADA and the Rehabilitation Act may not be dismissed, since the factors in favor of abstention are present in this case, a stay of those claims is proper. *Quackenbush,* — U.S. at —, 116 S.Ct. at 1722 ("abstention principles [apply] to actions 'at law' [ ] to permit a federal court to enter a stay order that postpones adjudication of the dispute ...") (citations omitted). "[F]ederal courts may stay actions for damages based on abstention principles...." *Id.*

### C. *Immunity*

Defendants move to dismiss Plaintiff's damages claims against Defendants in their individual capacities on the basis of absolute immunity.

Judges and prosecutors are absolutely immune from liability for damages based on actions taken in furtherance of their judicial or prosecutorial duties. However, " 'immunity is justified and defined by the *functions* it protects and serves, not by the persons to whom it attaches.' " *Gyadu v. Workers' Compensation Com'n,* 930 F.Supp. 738, 748 (D.Conn.1996) (citing *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988)) (emphasis in original). Accordingly, absolute immunity protects officials from liability for actions which are functionally comparable to those of judges and prosecutors.

"Persons performing adjudicatory functions in administrative agencies enjoy absolute immunity from liability for damages for their judicial acts." *Id.* (citing *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978)). "State officials performing prosecutorial functions—including their decisions to initiate administrative proceedings aimed at legal sanctions—are entitled to absolute immunity as well." *Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698, 701 (1st Cir.1995) (citing *Butz v. Economou,* 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978)). "Because '[t]he decision to initiate administrative proceedings against an individual or corporation is very much like a prosecutor's decision to initiate or move forward with a criminal prosecution ... [and because] [a]n individual targeted by an administrative pro-

**5.** Although recognizing the continued validity of *Fair Assessment,* in *Quackenbush,* the Supreme Court stressed:

> Fair Assessment was a case about the scope of § 1983 cause of action, not the abstention doctrines. To the extent that Fair Assessment does apply abstention principles, its holding is very limited. The damages action in that case was based on the unconstitutional application of a state tax law and the award of damages turned first on a declaration that the state tax was in fact unconstitutional.

*Quackenbush,* — U.S. at —, 116 S.Ct. at 1722 (internal citation omitted).

**6.** Although not raised by Defendants, Plaintiff's § 1983 claims against Defendants in their official capacities must also be dismissed on separate grounds. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473

U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citing *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985)). Here, the entity is the State of Connecticut. In a suit to recover damages, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1988).

Moreover, Congress has not waived the states' Eleventh Amendment immunity from suit under § 1983. *Will,* 491 U.S. at 66–67, 109 S.Ct. at 2309–10. Accordingly, there is no subject matter jurisdiction over Plaintiff's claims against Defendants in their official capacities. *Atlantic Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir.1993), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994). Congress has waived the states' immunity under the ADA and the Rehabilitation Act. *See Duffy v. Riveland,* 98 F.3d 447, 452 (9th Cir.1996).

ceeding will react angrily and may seek vengeance in the courts,' the public interest in the effective execution of administrative policy require[s] complete immunity for officers pressing charges and presenting evidence in public law setting." *Dobosz v. Walsh*, 892 F.2d 1135, 1139 (2d Cir.1989) (citing *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

The public interest in the effective execution of administrative policy is equally compelling in the field of state medical licensing:

> There exists a strong need to insure that individual Board members perform their functions for the public good without harassment or intimidation. There exists adequate due process safeguards under [the] law to protect against unconstitutional conduct without reliance upon private damages lawsuits. It is important to insulate Board members from political influences in meeting their adjudicatory responsibilities in the adversarial setting involving licensure to practice medicine. Public policy requires that officials serving in such capacities be exempt form personal liability.

*Horwitz v. Bd. of Med. Examiners of State of Colo.*, 822 F.2d 1508, 1515 (10th Cir.1987), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987). *Accord: Watts v. Burkhart*, 978 F.2d 269, 278 (6th Cir.1992) (holding that physician's suit against members of the State Medical Licensing Board sued individually for damages in connection with Board's suspension of his license are protected by quasi-judicial immunity); *Wang*, 55 F.3d at 701 (medical board members were absolutely immune from suit in their individual capacities for damages for claims arising out of their "quasi-judicial and/or prosecutorial functions").

 Plaintiff is suing the Commissioner of the Department of Health, the Director of the Division of Medical Quality Assurance (a division of the Department of Health) and the Chairman of the Medical Examining Board for their actions taken in moving to suspend, and ultimately suspending, Plaintiff's license to practice medicine pending a hearing on the revocation or suspension of his license. These actions were prosecutorial in nature and, therefore, Defendants are absolutely immune from a suit for damages against them in their individual capacities.[7]

### III. *CONCLUSION*

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. # 13] is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's equitable claims for injunctive relief and declaratory judgment are dismissed. Plaintiff's claims for damages against Defendants in their official and individual capacities under § 1983 are dismissed. Plaintiff's claims for damages against Defendants in their individual capacities under the ADA and the Rehabilitation Act are dismissed. Plaintiff's claims for damages against Defendants in their official capacities under the ADA and the Rehabilitation Act are stayed pending completion of the pending state proceedings.

SO ORDERED.

---

7. Immunity not only applies to § 1983 claims, but also to suits under the ADA and the Rehabilitation Act. *Allison v. Department of Corrections*, 94 F.3d 494 (8th Cir.1996).