**RAPID RUBBISH REMOVAL, INC.,**
**and Richard Gorman, Plaintiffs,**

v.

**Hon. Barbara RIPLEY, Secretary,**
**Vermont Agency of Natural**
**Resources, Defendant.**

No. 2:97–CV–186.

United States District Court,
D. Vermont.

Dec. 3, 1997.

John Lewis Franco, Jr., Burlington, VT, for Plaintiffs.

Ronald Albert Shems, Asst. Atty. Gen., Montpelier, VT, for Defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

This is an action for declaratory judgment, injunctive relief, and damages under the United States Constitution and 42 U.S.C. § 1983. Plaintiffs seek to vacate the Vermont Agency of Natural Resources ("VANR") decisions denying certification of their solid waste facility and finding Plaintiff Gorman not "rehabilitated" for the purposes of certification; to enjoin Ripley and the VANR from deciding whether to renew Plaintiffs' waste transport permits; and to obtain a declaratory judgment that 10 V.S.A. § 6605f is unconstitutional as applied to Plaintiff Gorman.

The Defendant has moved to dismiss the complaint on several grounds, including the abstention doctrines of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). For the reasons stated below, the Court abstains from exercising jurisdiction in this matter and grants Defendant's Motion to Dismiss.

### I. *Factual Background*

Rapid Rubbish Removal, Inc. ("Rapid Rubbish") owns and operates a waste collection and hauling business involving a waste transfer station and several vehicles. Gorman is the company's President and sole shareholder. The VANR issues state certification for transfer stations and (since 1995) waste transportation permits.

In November 1990, Gorman was charged with dumping some 600 cubic yards of construction and demolition debris on his property. In November 1991, he pled *nolo contendre* in the Caledonia District Court to running an uncertified solid waste facility. The court imposed a $ 5000 fine and a probationary sentence. As a condition to probation, Gorman was to: "comply with any and all requests of the Department of Environmental Conservation [a division of the VANR] to ... remediate the site described in the charges and any other site affected by the waste management activities at the site." (Paper 8, Exh. 15 at 3–4.) Probation would end when the State certified that the site was remediated.

In September 1992, the VANR called for a four-phase procedure to examine how much remediation was needed. Gorman hired a consultant to complete the first phase. In February 1993 Gorman's counsel sent the VANR the first phase results and sought further instructions. The VANR renewed certification of the transfer station (for two years) in 1993; waste transportation permits were also renewed annually (with the Department of Motor Vehicles), through 1994.

June 1994 marked the enactment of the "Waste Management Personnel Background Review" statute, 10 V.S.A. § 6605f. It provides, *inter alia,* that those convicted of any solid waste-related environmental offenses within ten years prior to application may not receive solid waste facility certification or waste transportation permits. If a person so disqualified "has demonstrated ... rehabilitation, as determined by the [VANR] Secretary," permitting will not be denied. 10 V.S.A. § 6605f(f).

In February 1995, Rapid Rubbish applied to renew its certification. No response was received until April 26, 1995, when the VANR denied the application based on Gorman's past offense. Gorman appealed to the Waste Facility Panel ("WFP"); he was allowed to continue operating the station and his vehicles (the permits for which were retained but not renewed) during the appeal.

Gorman sought legislative help at that time. A bill to amend 10 V.S.A. § 6605f (by making the law inapplicable to misdemeanor convictions prior to July 1, 1994) passed the

Vermont State Assembly but was vetoed by Governor Dean on May 3, 1996. On May 7, two VANR representatives inspected Gorman's land. On May 8, Ripley held a televised press conference supporting the veto. She regretted the VANR's previous acquiescence to the State Assembly and, using pictures of Gorman's site taken the day before, she alleged that he had not complied with his probation.

On May 14, a new VANR instruction ordered Gorman to excavate and remove the 600 cubic yards of debris. Gorman and his consultants composed a plan to do so, but the agency again revised its instructions. Gorman was to remove all waste materials from the site, including a substantial amount of material which had been dumped before 1990. This material contained asbestos and had not been mentioned by the VANR before. Plaintiffs contend it was not subject to the charges against Gorman or to probation conditions.

Gorman protested the VANR's ability to dictate removal of that material. His consultant questioned the safety of removal as well as its expense (estimated to be $1,914,000; the VANR's estimate was $260,000). On July 31, the VANR ordered full removal or it would bring a probation violation charge. No such charge was ever brought. Gorman, however, filed a motion to amend his probation conditions in the Caledonia District Court. Marc Ollmann, representing Secretary Ripley, sat with the prosecution at the motion hearing, although he did not participate in the questioning of witnesses.

On June 12, 1997, following hearings and its review of the evidence, the Waste Facility Panel issued its findings. The WFP found that no standards or procedures had yet been created by Secretary Ripley governing whether, under 10 V.S.A. § 6605f(f), an applicant was "rehabilitated." The panel remanded to the VANR for the development of such procedures and standards,[1] and to decide if Gorman had been rehabilitated.

On September 5, the VANR found Gorman not rehabilitated. Looking to his "compli-

ance with the law," the agency cited a "failure to comply with the conditions of [his] probation to clean up the site pursuant to this Agency's request." (Paper 20, Att. 1 at 2–3). Gorman appealed this decision to the WFP, which will hear the case de novo. That decision may be appealed to the Vermont Supreme Court.

On September 8, the VANR instructed Gorman to apply for new waste transportation permits. This application is also subject to 10 V.S.A. § 6605f review, though the agency announced that it would investigate rehabilitation anew. That decision is pending. If denied permits, Plaintiffs may (according to Defendant) bring the case before an administrative hearing officer, then may petition a state superior court for review of governmental action under V.R.C.P. 75.

The motion to amend probation is currently under advisement in the Caledonia District Court. In addition, Plaintiffs are currently involved in litigation against their insurance company in Washington Superior Court. Plaintiffs seek coverage in the event that they are required to remediate material dumped on Gorman's land before 1990. Plaintiffs' request for a declaratory judgment is under advisement.

During the week of November 3, 1997, Gorman removed the 600 cubic yards of debris from his land. The waste was taken to a New Hampshire landfill.

Plaintiffs argue first that the VANR's 1995 certification denial came without prior notice or an opportunity to be heard, in violation of procedural due process. Compensatory and punitive damages are sought from Ripley in her individual capacity on that count. Second, Plaintiffs allege an agency pattern of bias which violates their rights to procedural and substantive due process and equal protection, under 42 U.S.C. § 1983. They seek a declaratory judgment to this effect and an injunction preventing Defendant and the VANR from making further permitting decisions regarding Rapid Rubbish. Third, Plaintiffs seek a declaratory judgment that

---

1. Presumably more is required than simply asking each offender of solid waste laws, "Kid, have you rehabilitated yourself?" *See* Arlo Guthrie,

"Alice's Restaurant Massacree," on *Alice's Restaurant* (Reprise Records 1967).

10 V.S.A. § 6605f, as applied, violates the double jeopardy, excessive fines, and ex post facto provisions of the United States Constitution.

According to Defendant's Motion to Dismiss, Secretary Ripley was never properly served in her official capacity, making many of the claims impossible to pursue. Even if she was correctly served, res judicata from the WFP proceeding bars this litigation, Plaintiffs fail to state a claim as to bias or due process, the double jeopardy, excessive fines, and ex post facto arguments are completely without merit, and the Court should invoke *Younger* or *Pullman* abstention.

## II. *Discussion*

### A. *Abstention Principles*

In considering abstention, this Court first notes "the principle that federal courts have a 'virtually unflagging obligation' to exercise jurisdiction over all cases properly before them." *Youell v. Exxon Corp.*, 48 F.3d 105, 108 (2d Cir.1995), *vacated sub nom. Exxon Corp. v. Youell*, 516 U.S. 801, 116 S.Ct. 43, 133 L.Ed.2d 9, *on remand* 74 F.3d 373 (1996) (citation omitted).

■ However, the Supreme Court has acknowledged four extraordinary and narrow exceptions to the duty to exercise jurisdiction. *See Youell*, 48 F.3d at 108–09. First, a federal court may abstain to avoid deciding a constitutional issue which may be disposed of by a state court ruling on state law. *See Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Second, abstention is appropriate in cases involving complex questions of state law which implicate important state policy issues. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Third, a federal court must abstain in cases filed to enjoin state enforcement proceedings absent a showing of bad faith, harassment, or other unusual circumstance calling for equitable relief. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Fourth, abstention is permissible "for reasons of wise judicial administration" when parallel state court proceedings are pending. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

Despite the elaboration of these four strains, abstention doctrine is fluid. "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 1527 n. 9, 95 L.Ed.2d 1 (1987).

The circumstances in this case justify either *Pullman* or *Younger* abstention. *See id.* ("[C]onsiderations similar to those that mandate *Pullman* abstention are relevant to a court's decision whether to abstain under *Younger* "). Although the Court may use either abstention theory, it chooses to abstain under *Pullman* for the reasons cited below.

### B. *Pullman Abstention*

■ Under the *Pullman* doctrine, abstention is appropriate in cases presenting federal constitutional issues which might be avoided or modified by a state court ruling on state law issues. *See Colorado River*, 424 U.S. at 814–816, 96 S.Ct. at 1244–45; *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 599 (2d Cir.1988). This doctrine is meant to prevent federal courts from interpreting the Constitution where the case can be decided on alternative grounds. *Youell*, 48 F.3d at 109.

■ The federal courts prefer not to interpret unclear state laws before state courts have approached the issue. *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 84, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). A federal opinion would not be binding and could subsequently be discredited by a state ruling. The federal decision would be essentially advisory. *Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979). *Pullman* abstention allows federal courts to retain jurisdiction over federal constitutional claims pending a state court decision. *See Hawaii Housing Authority v.*

*Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2326, 81 L.Ed.2d 186 (1984).

■ The facts of this case meet the *Pullman* doctrine's three criteria. First, this dispute involves a controlling, unsettled issue of state law. Second, resolution of the state law issue could eliminate the need to adjudicate federal claims. Third, the state law is capable of being construed in such a way as to dispose of or modify the federal question. *Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 126 (2d Cir. 1995).

Issues of unsettled state law permeate this case. First, the definition of "rehabilitation" under 10 V.S.A. § 6605f(f) must be scrutinized. The VANR had no rehabilitation standards prior to this case. It found compliance with the law, specifically with its own probation conditions, dispositive as to Gorman's rehabilitation. The WFP (or the Vermont Supreme Court on appeal) could give rehabilitation a different meaning and make a de novo finding as to Gorman.

Gorman's probation terms represent a second unsettled state issue. These conditions enable the VANR to dictate remediation. With respect to Plaintiffs, this regulatory body is both probation officer and permitting agency; it can alter the remediation conditions so that Gorman is not in compliance with probation, then use that fact to deny him permits. The Caledonia District Court will decide whether this arrangement is permissible.

A third issue concerns the applicability of 10 V.S.A. § 6605f to Gorman. While Plaintiffs raise federal constitutional challenges to this law, a state body could evaluate it on state statutory or constitutional grounds. The WFP or the Vermont Supreme Court may specify whether Gorman was meant to be caught in the statute's net.

If one or more state law issues are resolved, adjudication of Plaintiff's federal constitutional claims could be avoided or altered. Changes in the definition of rehabilitation, modified probation terms, or a ruling on the applicability of 10 V.S.A. § 6605f, would alter or eliminate the federal claims and issues. If resolution of the state law enables Plaintiffs

to obtain certification and permits, federal action may be unneeded (except for the damages claim in Count 1, which Plaintiffs could pursue if they win below).

The state law questions are answerable in a manner which resolves or modifies the federal question. The WFP could find that 10 V.S.A. § 6605f does not apply to Gorman, or it could recite new rehabilitation criteria which Gorman meets. In either event Gorman would no longer be disqualified from obtaining certification (or permits, presumably). The sentencing court could amend Gorman's probation to put him in compliance. The state bodies could interpret state law in a variety of ways which would eliminate Plaintiffs' need to pursue federal constitutional claims.

While the elements for *Pullman* abstention are met, Plaintiffs are not foreclosed from ever bringing a federal action. Under *Pullman* abstention, Plaintiffs may reserve the right to litigate their federal claims in federal court. *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). They may also opt to litigate the federal constitutional issues in the state forum and forego a return trip. To reserve the federal claims, Plaintiffs need only inform the state bodies of what those claims are, so that the state law being disputed may be construed in light of those claims. At the close of the state proceedings, Plaintiffs may return to federal court. *Id.* at 419, 84 S.Ct. at 466.

### C. *Dismissal Without Prejudice*

■ Normally, the federal action is stayed during the pendency of the state proceedings. However, *Pullman* abstention has occasionally led to dismissal. *See AFA Distributing Co., Inc. v. Pearl Brewing Company,* 470 F.2d 1210, 1213–14 (4th Cir. 1973) (Fourth Circuit affirmed dismissal where ambiguous state statute had not yet been interpreted by state court, the case bordered on *Burford* abstention because it involved state's regulation of alcohol, party raising the federal question favored adjudication in the state court anyway, and rule as to dismissal or retention was "somewhat flexible"); *Berman Enterprises, Inc. v. Jor-*

*ling,* 3 F.3d 602 (2d Cir.1993) (Second Circuit affirmed dismissal of § 1983 complaint against New York State DEC Commissioner and Deputy; the only remaining issues in complaint concerned state law and would not leave plaintiffs any federal claims no matter the outcome). This Court opts to dismiss the case without prejudice.

The facts of this case support dismissal. Unlike many instances of *Pullman* abstention, the parties will not need to commence new state actions. The ongoing judicial and administrative proceedings will address the state law questions and could make a federal constitutional decision unnecessary.

In addition, this Court could have abstained under *Younger* and dismissed the case. The facts satisfy *Younger* criteria. Important state judicial and administrative proceedings are ongoing, concerning the enforcement of state environmental laws and related licensure provisions. Plaintiffs could raise their constitutional issues in these proceedings below. Absent special circumstances, the Court should avoid enjoining them. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). The facts do not support Plaintiffs' allegations of bias or bad faith; thus no special circumstances exist.

*Younger* abstention is an appropriate option. However, under *Younger* doctrine, Plaintiffs would be precluded from returning to federal court on these claims. *See Temple of the Lost Sheep v. Abrams,* 930 F.2d 178 (2d Cir.1991). This Court is concerned about whether the State will provide a suitable forum to address the federal constitutional issues. Therefore, only *Pullman* abstention will ensure that Plaintiffs are accorded judicial process on these claims.

The state judiciary is certainly capable of enforcing the federal constitution. However, there is a possibility that Rapid Rubbish would be closed before Plaintiffs are fully heard at the state level. The VANR may bring an enforcement action against Rapid Rubbish, with respect to its lack of certification, before judicial review of the VANR, WFP, and Caledonia District Court proceedings is complete. Such an action would shut

Rapid Rubbish down. Once closed, and once clientele are lost, the company would stand little chance of being resurrected. There is no way of knowing if state courts would stay enforcement pending judicial review.

An enforcement action closing Rapid Rubbish would render the state judicial review, and any victory for Plaintiffs, meaningless. Such interference with the judicial process may infringe on Plaintiffs' federal due process rights. In that event, abstention under *Pullman* permits Plaintiffs to refile the case in this Court, to seek both immediate relief and an adjudication of their constitutional issues.

Just as dismissal under *Pullman* is rare, dismissal of damages claims through abstention is generally prohibited. *Quackenbush v. Allstate Insurance Company,* 517 U.S. 706, 720–21, 116 S.Ct. 1712, 1723, 135 L.Ed.2d 1 (1996). However, in *Quackenbush* the Court preserved its prior ruling in *Fair Assessment in Real Estate Assn., Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), in which a § 1983 action challenging the constitutionality of a state's tax scheme was dismissed on abstention grounds. *Quackenbush,* 517 U.S. at 718–19, 116 S.Ct. at 1722. The Court noted that *Fair Assessment* had a limited basis in abstention doctrine. Nonetheless, it acknowledged the argument in *Fair Assessment* that the federal court should have declined to hear the case because recovering damages under the § 1983 claim required a " 'declaration' or determination of the unconstitutionality of a state tax scheme." *Id.,* quoting *Fair Assessment,* 454 U.S. at 115, 102 S.Ct. at 185. The damages claim resembled a claim for equitable relief, because no damages could be awarded without the court first issuing, essentially, a declaratory judgment. *See Amerson v. State of Iowa,* 94 F.3d 510, 513 (8th Cir.1996), *cert. denied* —— U.S. ——, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997).

The District of Connecticut endorsed this reading of *Quackenbush* in *Moran v. Connecticut Dept. of Public Health,* 954 F.Supp. 484 (D.Conn.1997). In *Moran,* a doctor challenged the suspension of his license by the Medical Examining Board and the constitu-

tionality of the revocation process. *Id.* at 489. The doctor sought damages under several statutes, including 42 U.S.C. § 1983. The other damages claims were stayed, but the court dismissed the § 1983 claim, finding it to be intertwined with a request for declaratory judgment. *Id.* at 488. The § 1983 claim rested entirely on the constitutionality of Connecticut's licensing framework; damages could not be won without an initial declaratory judgment. Therefore, when the court abstained, dismissal was appropriate. *Id.* at 489.

Here, Plaintiffs' damage claims are inextricable from their constitutional challenges. Count I alleges that Defendant violated Plaintiffs' due process rights in denying certification in April 1995, requesting:

> a declaratory judgment that [Defendant's action] failed to comply with the minimum requirements of procedural due process, was done in reckless disregard of plaintiffs right thereto, and was therefore null and void *ab initio*, and award plaintiffs compensatory and punitive damages against defendant in her individual capacity for same.

(Paper 2, ¶ 27.) The damages request was added to Count I in Plaintiffs' Amended Complaint (Paper 2). A declaratory judgment concerning the constitutionality of the certification procedure must be issued for the damages claim to survive. Like *Moran,* this case is one in which a § 1983 damages claim exists, but the relief sought is in fact equitable and discretionary. Dismissal is therefore justified.

III. *Conclusion*

Based on the foregoing analysis, the Court abstains from exercising its jurisdiction and Defendant's Motion to Dismiss (Paper 7) is hereby GRANTED without prejudice. All other motions are hereby DENIED.