Stuart G. SELKIN, M.D., Plaintiff,

v.

The STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, a board under the auspices of the New York State Department of Health, and Edwin L. Smith, Defendants.

No. 99 Civ. 8617(WCC).

United States District Court,
S.D. New York.

Sept. 3, 1999.

Wood & Scher, Scarsdale, NY, William L. Wood, Jr., of counsel, for plaintiff.

Eliot Spitzer, Attorney General of the State of New York, New York City, Barbara K. Hathaway, Asst. Attorney General, of counsel, for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This civil rights action, brought under 42 U.S.C. § 1983, is presently before the Court on the motion of plaintiff Stuart G. Selkin, M.D. ("Selkin") for a preliminary injunction enjoining defendants State Board for Professional Medical Conduct ("SBPMC") and Edwin L. Smith from revoking plaintiff's license to practice medicine. The Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1343 and 1331. For the reasons discussed below, plaintiff's motion is denied.

### BACKGROUND

#### I. The Administrative Proceeding

Selkin is a Board Certified Otolaryngologist (ear, nose and throat specialist) who received his license to practice medicine in New York in 1967. On or about October 14, 1998, charges of professional misconduct were filed against Selkin by the SBPMC, a board acting under the auspices of the New York State Department of Health, which has been charged by the legislature with responsibility for overseeing the competence and integrity of those licensed to practice medicine in New York State. *See* N.Y.Pub. Health Law § 230. Selkin was served with a Notice of Hearing and Statement of Charges on October 19, 1998. The charges included, *inter alia,* moral unfitness to practice medicine (based upon allegations that Selkin had consensual sexual relations with four women while they were his patients), gross negligence, gross incompetence, negligence on more than one occasion, fraudulent

practice and failure to maintain appropriate medical records.

A hearing was held before a three-member committee of the SBPMC (the "Committee") from December 28, 1998 through March 19, 1999, and was presided over by Edwin L. Smith, an Administrative Law Judge.[1] At said hearing, Selkin was represented by an attorney and had an opportunity to present evidence and witnesses on his behalf, to have subpoenas issued on his behalf, and to cross-examine any witnesses testifying against him. *See* N.Y.Pub. Health Law § 230(10)(f).

On or about June 1, 1999, the Committee issued its Determination and Order, BPMC–99–122, dismissing all charges against Selkin with the exception of one count of negligence on more than one occasion (for which he was fined $10,000), two counts of failing to maintain proper medical records (for which he was fined an additional $10,000), and two counts of moral unfitness. In particular, the Committee found that:

**E.  [Selkin] engaged in a sexual relationship with his patient, Patient E**

78.  [Selkin] testified that he had sexual relations with Patient E while she was a patient for an 18 month period ending in early 1990 and that she was a patient of his from 1986 until early 1990.

79.  After Patient E's husband, Mr. N, discovered the sexual relationship between [Selkin] and his wife, Patient E, there was an armed confrontation, with guns drawn, between [Selkin] and Mr. N, resulting in the arrest of Mr. N.

80.  [Selkin]'s relationship with Patient E was in violation of a long-standing consensus within the medi-

cal profession that sexual contact or sexual relations between physicians and patients are unethical. . . .

**G.  [Selkin] engaged in a sexual relationship with his patient, Patient G**

83.  By letter dated December 29, 1994, [Selkin] wrote to John Flynn, an investigator with OPMC, that he had a sexual relationship with a single woman, later identified as Patient G, who was a patient at the time of that relationship.

84.  [Selkin] testified at the hearing that his letter was an incorrect statement based, not on his recollection, rather on "information" from Patient G that it was her son that was a patient at the time that she and [Selkin] had a sexual relationship.

85.  Patient G did not testify at the hearing, nor did [Selkin] produce corroborating documentation as to the dates in question.

86.  [Selkin]'s relationship with Patient G was in violation of a long-standing consensus within the medical profession that sexual contact or sexual relations between physicians and patients are unethical.

In support of its conclusion that engaging in consensual sexual relations with current patients constitutes "professional misconduct" pursuant to N.Y.Educ.Law § 6530,[2] the Committee quoted the Council of Ethical and Judicial Affairs of the American Medical Association, Report on Sexual Misconduct in the Practice of Medicine, issued on November 21, 1991, which states that "[t]here is a long-standing consensus within the medical profession that sexual relations between physicians and patients are unethical." The Committee

---

1.  The Administrative Law Judge rules on motions and objections but does take part in the deliberations; only the three members of the Committee vote on the disposition of the charges. *See* N.Y.Pub. Health Law § 230(10)(e).

2.  N.Y.Educ.Law § 6530 lists forty-seven acts that constitute "professional misconduct" for which a physician may be disciplined by the SBPMC. Section 6530(20) identifies as "professional misconduct", "[c]onduct in the practice of medicine which evidences moral unfitness to practice medicine."

also cited the Hippocratic Oath and Opinion 8.14 of the Code of Medical Ethics, issued in 1986, which opines that "sexual misconduct in the practice of medicine violates the trust the patient imposes on the physician and is unethical." The Committee went on to note that:

Given the nature of the doctor/patient relationship, there cannot be consent to an act which is *per se* unethical. The need to maintain the doctor's objectivity in the treatment of a patient and to avoid unnecessary complications in that relationship not only with the patient but, as well, with the patient's family ... leave [sic] no doubt that this activity must be viewed with abject condemnation.

The penalty imposed by the Committee with respect to its finding of moral unfitness was revocation of Selkin's license to practice medicine in the State of New York. Such revocation was to become effective upon service of the Committee's Determination and Order.

## II.  *The Article 78 Proceeding*

Selkin sought immediate review of the Committee's Determination and Order by instituting an Article 78 proceeding in the Supreme Court of the State of New York, Appellate Division, Third Department, *In re Selkin v. State Bd. for Prof'l Med. Conduct*, Docket No. 84970. *See* N.Y.PUB. HEALTH LAW § 230–c(5); N.Y.C.P.L.R., ch. Eight, Art. 78. In connection therewith, Selkin obtained a Temporary Restraining Order ("TRO") dated June 15, 1999, staying enforcement of the Determination and Order (and therefore the revocation of his medical license) pending resolution of the Article 78 proceeding.

However, the SBPMC exercised its right to appeal the Committee's decision to the Administrative Review Board ("ARB"), an act which divests the Appellate Division of jurisdiction over the proceeding. *See* N.Y.PUB. HEALTH LAW §§ 230–c(4) and (5); *In re Saunders v. State Bd. for Professional Medical Conduct*, 253 A.D.2d 569, 678

N.Y.S.2d 912 (3d Dep't 1998). On the motion of the SBPMC, the Appellate Division accordingly dismissed Selkin's Article 78 proceeding by decision dated July 20, 1999. The TRO issued by the Appellate Division was subsequently vacated as of August 5, 1999.

## III.  *The § 1983 Action*

Under New York law, the ARB is prohibited from staying the enforcement of a Committee determination and order revoking a physician's medical license. *See* N.Y.PUB. HEALTH LAW § 230–c(4). Selkin therefore initiated this action under 42 U.S.C. § 1983 on August 4, 1999, alleging that by issuing BPMC–99–122, the Committee, acting under color of state law, has deprived him of his Constitutional rights to due process, freedom of intimate association and freedom from subjugation to an *Ex Post Facto* law. By Order to Show Cause, Selkin filed a complaint seeking a declaratory judgment nullifying the Determination and Order of the Committee as unconstitutional, and sought a temporary restraining order and preliminary and permanent injunctions enjoining enforcement of the same.

Although Selkin's application for a TRO was denied, the Honorable Sidney H. Stein, signed an Order to Show Cause dated August 4, 1999, requiring the SBPMC to show cause why a preliminary injunction should not be issued enjoining the enforcement of BPMC–99–122. Oral argument thereon was heard by this Court on August 27, 1999.

## DISCUSSION

■ Generally, a party seeking a preliminary injunction must establish (a) irreparable harm and (b) *either* (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171

(2d Cir.1999); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). However, "[w]here, as here, the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,"[3] the moving party is entitled to a preliminary injunction only if he can demonstrate a likelihood of success on the merits. *Latino Officers Ass'n*, 170 F.3d at 171; *see also Union Carbide Agric. Products Co. v. Costle*, 632 F.2d 1014, 1018 (2d Cir. 1980).

▪ Moreover, in light of the fact that the Committee's Determination and Order regained effect (and therefore Selkin's license was revoked) on August 5, 1999, he is not asking this Court to preserve the status quo; rather, he is asking us, in effect, to reinstate his medical license.[4] Under such circumstances, Selkin must show a "substantial" likelihood of success on the merits, *i.e.*, that his cause of action is "considerably more likely to succeed than fail." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir.1988) (where injunctive relief sought "does not merely maintain the status quo, but rather grants the movant substantially all the relief he ultimately seeks, a more stringent standard is required").[5]

The defendants contend that, even if Selkin could prove that he would sustain an irreparable injury in the event the relief sought is not granted, and that no remedy at law could adequately compensate him for such injury, he cannot show a substantial likelihood of success on the merits

because *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny require this Court to abstain from exercising jurisdiction over this matter and to dismiss the action. Although the defendants mischaracterize the *Younger* abstention doctrine as precluding a finding of success on the merits, we agree that *Younger* and its progeny require this Court to deny Selkin's motion for a preliminary injunction.[6]

▪ The *Younger* doctrine requires a federal court to abstain from enjoining a pending state proceeding, absent extraordinary circumstances, where an important state interest is involved, and the movant will have an adequate opportunity to raise his constitutional claims in the state proceedings. *See Younger*, 401 U.S. at 43–56, 91 S.Ct. 746 (denying request to enjoin pending state criminal prosecution); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (extending *Younger* to quasi-criminal proceeding brought by state to enforce obscenity statute); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (extending *Younger* to civil proceeding involving contempt charges for failure to comply with subpoena); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (applying *Younger* abstention in civil proceeding challenging state judgment lien and appeal bond provisions).

▪ The principles of abstention announced in *Younger* have been held to apply with equal force to state administrative proceedings of an adjudicative nature.

---

3. The SBPMC was acting in the public interest and within its adjudicative authority conveyed by N.Y.Pub. Health Law § 230 when it issued its Determination and Order.

4. The purpose of a preliminary injunction is to preserve the status quo between parties pending a final determination of the merits. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir.1989).

5. Ordinarily, plaintiff would only have to show that the probability of prevailing on the

merits of his claims is greater than fifty percent. *See id.*

6. In *Younger*, the Court never reached the argument regarding plaintiff's likelihood of success on the merits because principles of comity and federalism required the Court to refrain from exercising its equitable jurisdiction over the action altogether. 401 U.S. at 54, 91 S.Ct. 746 ("our holding rests on the absence of the factors necessary under equitable principles to justify federal intervention").

*See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (abstention proper where sex discrimination claim was pending before state civil rights commission); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (federal court should abstain from interfering with pending state attorney disciplinary proceedings).

■ The three-part test enunciated by the Supreme Court for determining whether *Younger* abstention is appropriate in the administrative context is: (1) whether the ongoing administrative proceedings are "judicial in nature;" (2) whether the proceedings implicate important state interests; and (3) whether the federal plaintiff has an adequate opportunity to raise his constitutional challenges during or after the proceeding. *See Dayton Christian Schools,* 477 U.S. at 627, 106 S.Ct. 2718; *Middlesex County Ethics Comm.,* 457 U.S. at 432–34, 102 S.Ct. 2515; *see also Christ the King Regional High School v. Culvert,* 815 F.2d 219, 224 (2d Cir.1987) (adopting three-part test).

■ There is clear precedent to support the conclusion that the concerns of comity and federalism expressed in *Younger* warrant abstention where state disciplinary proceedings contemplating the revocation of a physician's medical license are ongoing. *See, e.g., Gibson v. Berryhill,* 411 U.S. 564, 576–77, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (noting that "administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings" but refusing to abstain because action fell within bias exception to *Younger*—board was comprised of optometrists' competitors); *Doe v. State of Conn., Dep't of Health Servs.,* 75 F.3d 81, 85 (2d Cir.1996) (abstention warranted where physician claimed Medical Examining Board was violating his rights under Americans with Disabilities Act and sought to enjoin Board from holding administrative hearing to determine his fitness to practice medicine); *Blake v. Lang,* 669 F.Supp. 584, 589 (S.D.N.Y.1987) (district court must abstain from considering physician's constitutional challenge to revocation of his license to practice in New York because administrative hearing and subsequent state court review is clearly judicial in nature). This prerequisite is therefore satisfied because an appeal of the Committee's Determination and Order is currently pending before the ARB, and Selkin has confirmed his intent to seek immediate state court review of any adverse determination by the ARB.

Further, it is beyond dispute that New York's disciplinary proceedings implicate an important state interest in protecting the health of its citizens by regulating the practice of medicine within its borders. *See Doe,* 75 F.3d at 85 ("Connecticut's legislative scheme for disciplining doctors serves important and obvious public health objectives"); *Blake,* 669 F.Supp. at 589 (New York has a "strong interest in protecting the health of its citizens by conducting disciplinary proceedings for physicians charged with misconduct"); *cf. Middlesex County Ethics Comm.,* 457 U.S. at 434, 102 S.Ct. 2515 ("The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice").

Finally, all constitutional arguments contained in Selkin's most recent pleading can be addressed in the pending ARB proceeding or thereafter in state court judicial review proceedings. Selkin's Amended Complaint (as more fully explicated by the Memorandum of Law submitted in support of his Motion for a Preliminary Injunction) raises the following constitutional challenges to the Committee's Determination and Order: (1) the Committee's finding that Selkin's engaging in consensual sexual relations with a patient constitutes *per se* unethical conduct violates his constitutional right of intimate association; (2)

N.Y.Educ.Law § 6530(20) prohibiting "[c]onduct in the practice of medicine which evidences moral unfitness to practice medicine" is unconstitutionally vague in that it deprives physicians of notice of precisely what acts are prohibited, in violation of the Due Process Clause of the 14th Amendment; (3) Selkin was deprived of his due process rights because he was not given notice that engaging in consensual sexual relations with his patients was prohibited by law; (4) N.Y.Educ.Law § 6530(20) prohibiting "[c]onduct in the practice of medicine which evidences moral unfitness to practice medicine" is unconstitutionally overbroad in that it prohibits protected activities; and (5) the Committee's Determination and Order violates the *Ex Post Facto* Clause of the U.S. Constitution because it imposes a penalty upon Selkin for acts which were not legally prohibited when they were committed.

Selkin is not precluded from raising constitutional concerns before the ARB. *See* N.Y.Pub. Health Law §§ 230–c(4)(a) and (b). In addition, under New York law, a Committee's Determination and Order, and any subsequent order of the ARB, are reviewable by the Supreme Court, Appellate Division, Third Department pursuant to Article 78 of the C.P.L.R. *See id.* at § 230–c(5).

All challenges to the constitutionality of the relevant statutes, as applied to Selkin, may be raised in the Article 78 proceeding. *See, e.g., In re Binenfeld v. N.Y. State Dep't of Health,* 226 A.D.2d 935, 640 N.Y.S.2d 924 (3d Dep't 1996) (due process); *In re Sokol v. N.Y. State Dep't of Health,* 223 A.D.2d 809, 636 N.Y.S.2d 450 (3d Dep't 1996) (double jeopardy); *Block v. Ambach,* 140 A.D.2d 814, 528 N.Y.S.2d 204 (3d Dep't 1988), *aff'd,* 73 N.Y.2d 323, 537 N.E.2d 181, 540 N.Y.S.2d 6 (1989) (due process). The Appellate Division may also convert the proceeding into an action for a declaratory judgment pursuant to N.Y.C.P.L.R. § 103(c) in order to address Selkin's facial challenges to the constitutionality of the statutes at issue. *See Bryant Ave. Tenants' Ass'n v. Koch,* 71 N.Y.2d 856, 522 N.E.2d 1041, 527 N.Y.S.2d 743 (1988) (Article 78 proceeding is not appropriate remedy to attack facial validity of legislative enactment); *DuBois v. Town Bd. of New Paltz,* 35 N.Y.2d 617, 324 N.E.2d 153, 364 N.Y.S.2d 506 (1974); *In re Overhill Bldg. Co. v. Delany,* 28 N.Y.2d 449, 271 N.E.2d 537, 322 N.Y.S.2d 696 (1971) (Article 78 proceeding can be converted to declaratory judgment action to attack constitutionality of statute on its face only if all necessary parties are named); *Consol. Rail Corp. v. Tax Appeals Tribunal of State of New York,* 231 A.D.2d 140, 660 N.Y.S.2d 459 (3d Dep't 1997) (where relief sought is declaration that statute itself, as opposed to action taken thereunder, is unconstitutional, Article 78 proceeding must be converted to action for declaratory judgment).

Accordingly, *Younger* abstention is warranted with respect to all claims set forth in Selkin's Amended Complaint.[7] However, in his Reply Brief submitted in support of his Motion for a Preliminary Injunction, Selkin raised, for the first time, a constitutional challenge that would apparently survive all relevant abstention doctrines. Because Rule 15(a) of the Federal Rules of Civil Procedure mandates that leave to amend "shall be freely given when justice so requires," and because a subsequent motion for a preliminary injunction would certainly follow on the heels of Selkin's Second Amended Complaint (and for the sake of expedition), we will address Selkin's new argument as if it were properly incorporated in Selkin's current pleading.

Relying on *Hachamovitch v. DeBuono,* 159 F.3d 687 (2d Cir.1998), Selkin argues

---

7. None of the exceptions to the *Younger* abstention doctrine applies here. Selkin has not argued, and there is no evidence in the record to support a finding that the administrative proceeding was initiated in bad faith or that the Committee was biased against him. Nor are the challenged statutes "flagrantly and patently" unconstitutional. *See Younger,* 401 U.S. at 49, 53–54, 91 S.Ct. 746.

that this Court cannot abstain from exercising jurisdiction in the case at bar because the administrative and state-court review procedures themselves deprive Selkin of his due process rights guaranteed by the Fourteenth Amendment in that he is unable to seek a stay of the Committee's Determination and Order revoking his license pending the outcome of the ARD hearing. In *Hachamovitch*, a physician whose license had been suspended by the SBPMC brought a § 1983 action against the state officials alleging that the disciplinary procedures violated due process because they failed to permit reopening of a hearing, even after new and exculpatory evidence had been discovered. The Court of Appeals for the Second Circuit held that the District Court should not have abstained from hearing plaintiff's constitutional challenge under the abstention doctrine promulgated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[8]

Notwithstanding the fact that *Hachamovitch* concerned the application of *Burford* rather than *Younger* abstention, this Court has previously recognized that such an exception may also exist under *Younger*. *See Blake*, 669 F.Supp. at 589. In deciding that *Younger* and its progeny required this Court to abstain from considering whether the Health Commission discriminated against the plaintiff physician by revoking his license, we noted that the plaintiff's claim "is not that the administrative procedures have any *inherent* constitutional infirmities." *Id.* (emphasis supplied).

■ In his Reply Brief, Selkin argues that N.Y.Pub. Health Law § 230-c(5), on its face, violates the Due Process Clause of the Fourteenth Amendment because it precludes all physicians whose licenses have been revoked from obtaining or sustaining an injunction against the enforcement of the penalty pending review by the ARB. Even assuming that abstention is not warranted with respect to this claim, Selkin has failed to show a substantial likelihood of success on the merits.

Selkin has cited no authority whatever in support of his claim that the Due Process Clause guarantees the right to seek a stay of enforcement of an order (administrative or judicial) depriving an individual of a constitutionally protected property right. Indeed, in light of the Supreme Court's holding in *Louisville & Nashville R. Co. v. Stewart*, 241 U.S. 261, 263, 36 S.Ct. 586, 60 L.Ed. 989 (1916), that a State is not constitutionally required "to provide for a suspension of the judgment" during an appeal, it is unlikely that Selkin would succeed on his claim. *See Pennzoil*, 481 U.S. at 32–33, 107 S.Ct. 1519 (Stevens, J., concurring) ("The proposition that stays of execution are available as a matter of federal constitutional rights was rejected long ago") (citing *Louisville & N.R. Co.*, 241 U.S. at 263, 36 S.Ct. 586).

Moreover, the Supreme Court has at least impliedly held that a statute prohibiting the stay of a professional license suspension pending administrative review does not violate the Due Process Clause of the Fourteenth Amendment as long as the statute assures the licensee of a sufficiently timely postsuspension hearing. *See Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (due process challenge to New York statute authorizing summary suspension of harness racing trainer's license). Selkin does not contend that N.Y.Pub. Health Law § 230-c fails to assure licensees a prompt disposition upon review.[9] Therefore, even assuming that

**8.** Today, the *Burford* abstention doctrine is applied in only the most limited of circumstances where the exercise of federal jurisdiction would interfere with a complex regulatory system in an area of particular interest to the state requiring uniform regulation (*i.e.*, regulation of the oil industry in Texas). *See*

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723–728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

**9.** Further, although Selkin is unable to obtain a stay pending the ARB determination through the statutorily prescribed Article 78

Selkin would sustain an irreparable injury if he were not afforded the relief requested, he has failed to sustain his burden of showing a substantial likelihood of success on the merits of his due process claim. Accordingly, plaintiff's motion for a preliminary injunction is denied.

## CONCLUSION

For the reasons discussed above, plaintiffs' motion for a preliminary injunction is denied.

proceeding, there appears to be no statutory bar against Selkin seeking a TRO by filing a declaratory judgment action in state court, challenging N.Y.PUB. HEALTH LAW § 230–c on the basis set forth in *Barry*.